## SIMMONS v. BURLINGTON, CEDAR RAPIDS AND NORTHERN RAILWAY COMPANY.

## BURLINGTON, CEDAR RAPIDS AND NORTHERN RAILWAY COMPANY v. SIMMONS.

Nos. 11 and 12.	Argued November 1, 1894. — Decided October 21. 1895.

When a junior mortgagee is a party defendant to a foreclosure bill in which there is a prayer that he be decreed to redeem, and when the priority of the plaintiff's mortgage is found or conceded, and a sale is ordered in default of payment, declaring the right of the debtor to redeem to be forever barred, a similar order as to right of redemption by the junior mortgagee is not substantially, or even formally, necessary.

In such case a junior mortgagee, who stands by while the sale is made and confirmed, must be deemed, in equity, to have waived his right to redeem.

A decree in such a suit that the sale is to be made subject to the rights of the junior mortgagee and of intervening creditors, and reserving to the court the right to make further orders and directions, and providing that no sale shall be binding until reported to the court for its approval, and a subsequent order that the property shall be sold subject to the future adjudication as to such rights, and the property conveyed subject thereto, while it warrants a contention that the court intended to make a future disposition of the claims of such parties, does not authorize the junior mortgagee to wait for a period of seven years before attempting to enforce his alleged rights; and such delay deprives him of the right to ask the aid of a court of equity in enforcing them.

THE Burlington, Cedar Rapids and Minnesota Railway Company was a corporation organized under the laws of the State of Iowa, and, in pursuance of its granted powers, had, prior to the litigation which brought the case here, con-

structed a main line and three branches known as "the Milwaukee Extension," "the Pacific Extension," and "the Muscatine Western." It had at different times executed mortgages, one upon the main line, covering the railway, rolling stock, and franchises held or thereafter to be acquired, securing bonds to the amount of $5,400,000; one subsequent in date upon the Milwaukee extension, securing bonds to the amount of $2,200,000; one later in date, upon the Muscatine Western extension, securing bonds to the amount of $800,000; and one, still later in date, upon the Pacific extension, securing bonds in the sum of $1,800,000; and, finally, one known as the income and equipment mortgage, which was a second mortgage upon the railway and branches, and purporting to be a first mortgage upon the income and upon certain rolling stock not covered by the first mortgages.

On the 15th day of May, 1875, Charles L. Frost, as surviving trustee in the "main line" mortgage, filed in the Circuit Court of the United States for the District of Iowa an original bill against the Burlington, Cedar Rapids and Minnesota Railway Company, as sole defendant, to foreclose the mortgage on the main line. By amendment the Farmers' Loan and Trust Company was made a party defendant upon an averment that said company were trustees in a mortgage executed subsequent to the plaintiff's mortgage, and praying that "their lien on the income and equipment of said road may be declared subsequent to that of the plaintiffs', and they may be decreed to redeem plaintiffs' mortgage or their equity be barred and foreclosed, and for such other relief as the plaintiffs' case may require." A demurrer to this bill had been filed by the railway company, and, after the Farmers' Loan and Trust Company was added as a party defendant, it joined in the demurrer.

The several trustees in the Milwaukee extension mortgage and the Muscatine extension mortgage likewise filed in the same court foreclosure bills, in which, by amendment, the Farmers' Loan and Trust Company was made a party defendant, and as to which the same relief was prayed as that contained in the bill filed by Frost, trustee.

On June 23, 1875, the Farmers' Loan and Trust Company, as trustee in the mortgage on the Pacific division and as trustee in the income and equipment mortgage, filed an original bill against the railway company, praying a foreclosure of both of said mortgages. In that portion of the bill that dealt with the income and equipment mortgage it was alleged that said mortgage was a first lien on two engines, known as Nos. 30 and 31, and upon one hundred and thirty box cars, known as the even numbers from 882 to 1140. An answer was filed by the railway company, not traversing or denying the allegations of the bill as respected the mortgage on the Pacific division, but denying that as many equipment or income bonds had been sold as were averred to have been sold. On the 30th of October, 1875, the case came on for hearing, and a final decree was entered, ordering that the property covered by the Pacific division mortgage be sold without appraisement or redemption at public auction, etc., but ordering that "that portion of complainants' bill relating to the income and equipment mortgage, so called, is ordered to be consolidated with the causes pending in this court against said respondent, wherein said Frost, Taylor, and others are respectively complainants."

On the same day on which this decree was entered there was filed in the cause wherein Charles L. Frost and others, trustees, were plaintiffs, and the Burlington, Cedar Rapids and Minnesota Railway Company was defendant, an answer on behalf of the Farmers' Loan and Trust Company, in which it was admitted that the deed of trust to Frost was a first lien upon the main line and upon the ordinary rolling stock used thereon, not included in the mortgages executed by the company, known as the Pacific, Milwaukee, and Muscatine Western mortgages, and not including also engines Nos. 30 and 31 and box cars Nos. 882 to 1140.

On the same day the Farmers' Loan and Trust Company filed a cross-bill against the complainants in the several bills of complaint heretofore mentioned. The prayer of this cross-bill was as follows: "Wherefore your orator prays that said several suits be consolidated; that an equitable portion, as

above shown, be decreed as against all of said parties to be included in said deed of trust, (the income mortgage,) and that the same be properly designated as proper to be sold with said division under said mortgage; and that your orator have a decree declaring its lien upon said two engines 30 and 31 and said 130 box cars, under said mortgage, to be prior and paramount to any held by any of said trustees and parties."

The record discloses that on October 30, 1875, the causes were ordered to be consolidated; the defendant railway company withdrew its demurrers, pleas, and answers in the said several causes; and thereupon "said several causes and said consolidated cause came on for final hearing and trial before the court on the several bills of complaint, the amended bill, the several mortgages, and deeds of trust, and the proofs."

The decree found the amount remaining due and unpaid on the bonds secured by the main line mortgage, and adjudged the defendant to pay the same within ten days, in default of which payment its equity of redemption was to be forever barred, and W. M. Kaiser was appointed a special master to advertise and sell said main line and its franchises and appurtenant property "without redemption or appraisement," and it was ordered that James Grant be a special trustee to purchase the property for all holders of bonds secured by the main line mortgage who shall assent to such purchase, and pay their share of the expenses, and he was ordered to convey the property, under the direction of the court or one of its judges, to such corporation as such bondholders might organize, to hold the title thus acquired for the benefit of the whole or such part as should assent thereto.

Pending the foreclosure proceedings, a new corporation, called the Burlington, Cedar Rapids and Northern Railway Company, was formed for the purpose of purchasing the several mortgaged properties at the foreclosure sales. On the 22d day of June, 1876, the main line was sold by the master to a committee, who purchased for the benefit of all bondholders, and who directed that a conveyance be made by deed to the Burlington, Cedar Rapids and Northern Railway Company. On the same day the Muscatine western

extension was sold to the same purchasers, and at their request a deed was made to the said new company. Likewise, on the same day, the Pacific division was sold by the master, named in that decree, and the purchaser, John I. Blair, acting as trustee for the bondholders of the Pacific division, directed that the conveyance should be made to the said new company.

The masters making these sales executed deeds of the main line and of the several branches to the said the Burlington, Cedar Rapids and Northern Railway Company, conveying in terms an absolute title to the property described in each deed. The reports of the several sales, accompanied by the deeds executed by the masters, were submitted to the court for approval, as required by the decree, and on July 20, 1876, the Circuit Court judge approved said sales and deeds, and ordered the property to be delivered to said new company as of July 1, 1876.

The plan of reorganization provided for the execution of a mortgage of the entire property of the new company to the amount of $6,500,000, and such a mortgage, bearing date 1st of September, 1875, was, on November 9, 1876, executed and delivered to the Farmers' Loan and Trust Company as trustee.

It appears that the stock and bonds of the new organization were put upon the market, and have been bought and sold as mercantile securities since their issue in 1876.

In February, 1882, the Farmers' Loan and Trust Company addressed to the holders of the income and equipment bonds of the Burlington, Cedar Rapids and Minnesota Railway Company, and to Hubbard, Clark and Dawley, attorneys of some of said bonds, a communication, resigning as trustee under the income and equipment mortgage.

On April 13, 1883, there was presented to the District Judge of the United States for the Southern District of Iowa a petition of one Lawrence Turnure and others, claiming to be holders of income and equipment bonds of the Burlington, Cedar Rapids and Minnesota Railway Company. The petition alleged the resignation as trustee of the Farmers' Loan

and Trust Company, asked that Charles. E. Simmons should be appointed trustee, and that he should be authorized, as such, to file an "amended and supplemental cross-bill in the nature of a bill of revivor and supplement," and that he be permitted to bring in new parties in accordance with such amended and supplemental cross-bill.

On this petition an order was endorsed by the judge, appointing Simmons trustee and giving him leave to file his cross-bill in the nature of a bill of revivor and supplement, "subject to the right of all parties interested to move the vacation of this order after process to or appearance of the defendants."

On the following day the cross-bill of Charles E. Simmons, as trustee succeeding the Farmers' Loan and Trust Company, was filed against Frederick Taylor, as successor to Charles L. Frost, trustee, the Burlington, Cedar Rapids and Minnesota Railway Company, the Burlington, Cedar Rapids and Northern Railway Company, and the Farmers' Loan and Trust Company.

This cross-bill set up a history of the proceedings, not differing in substantial particulars from the statement herein previously made, but claimed that in no proceeding had there been any adjudication, determination, decree, or order in any manner affecting or determining the rights of the Farmers' Loan and Trust Company, as trustee under the income and equipment mortgage, or of the bondholders claiming under said mortgage.

The cross-bill prayed for an account to be rendered by the Burlington, Cedar Rapids and Northern Railway Company of the earnings of the main line since the said company had had control and management of the same, and prayed for a decree permitting the complainant to redeem the said main line upon payment of the amount bid by the committee of bondholders at the foreclosure sale, less the profits and gains ascertained by the accounting prayed for, and that, upon such redemption, the complainant should be decreed to take the title to said railway, franchises and property free and clear from the trust deed of Frost and the decree of the court in

his behalf, and from all rights of the Burlington, Cedar Rapids and Northern Railway Company in the property, and that the trust deed or mortgage from the Burlington, Cedar Rapids and Northern Railway Company to the Farmers' Loan and Trust Company, trustee, and the lien thereof be utterly cancelled as to said main line, and as to the complainant and bondholders claiming under said trust deed.

Issue was made by answer filed by the Burlington, Cedar Rapids and Northern Railway Company, in which answer, among other things, that company denied that there had been no adjudication determining the rights of the trustee under the income and equipment mortgage, and denied that any right of redemption remained in the Farmers' Loan and Trust Company, or in its successors, after the sale under the decree of October 30, 1875. This answer likewise denied that the bonds held by those on whose behalf the cross-bill was filed by Simmons were ever legally issued.

On November 28, 1883, the Farmers' Loan and Trust Company filed its answer to the cross-bill. In this answer it was averred that the Farmers' Loan and Trust Company had, in fact or law, no valid claim to the said engines and box cars, except subject to the prior claims of the other mortgages, and that all such claims were cut off and foreclosed by the sale under the decree of October 30, 1875.

Replications were filed and evidence taken, and on October 28, 1885, an opinion and decree were filed, finding, first, that the income and equipment mortgage was a valid lien upon the main line of the railway, and that the right of redemption under it had not been foreclosed by the decree of October 30, 1875, nor by the sale thereunder; second, that the Burlington, Cedar Rapids and Northern Railway Company was entitled to redeem the main line by paying off the income and equipment mortgage; third, that, in the event such redemption should not be made, then the bondholders secured by the income and equipment mortgage should be entitled to redeem said main line of railway by paying into court the amount due thereon, as the same should be determined in the manner

provided in the decree; fourth, that in the event of neither of these redemptions taking place, the Burlington, Cedar Rapids and Minnesota Railway Company should be entitled to redeem said main line by paying off the amount due on the deed of trust, or deeds of trust, against which such redemptions should be made; fifth, that in the event that neither the Burlington, Cedar Rapids and Northern Railway Company, nor the Burlington, Cedar Rapids and Minnesota Railway Company, should so redeem, then the income and equipment mortgage should be foreclosed and a sale of the property had, and the proceeds be applied, first, to the payment of the bonds issued under the main line mortgage, and second, the amount, thereafter to be determined, that should be due upon the income and equipment mortgage. The cause was then referred to a master to determine sundry matters stated in the decree.

From this decree an appeal was taken to this court, which appeal was dismissed for the reason that the decree appealed from was not a final decree. *Burlington, Cedar Rapids & Northern Railway* v. *Simmons*, 123 U. S. 52. Subsequently, a report was filed by the master, which was excepted to by Simmons, trustee, and by the Burlington, Cedar Rapids and Northern Railway Company. This report and the exceptions thereto were passed upon by the court below in an opinion filed on May 15, 1889, reported in 38 Fed. Rep. 683; and on May 29, 1889, a final decree was entered in accordance with the opinion of the court.

From this decree the Burlington, Cedar Rapids and Northern Railway Company appealed, as well from so much thereof as found the cross-complainant entitled to redeem at all, as from those portions thereof which affirmed the validity of any of the bonds and which held the railway company bound to account; and the cross-complainant appealed from such portions thereof as found invalid some of the bonds asserted in the cross-bill.

*Mr. Charles A. Clark* for Simmons.

*Mr. William A. Abbott* filed a brief for Henry Clews.

*Mr. J. M. Woolworth,* (with whom was *Mr. E. E. Cook* on the. brief,) for the Burlington, Cedar Rapids and Northern Railway Company.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

The decisive questions in this case turn on the character and effect of the decree entered on October 30, 1875. Did that decree leave the rights under the second mortgage, known as the income and equipment mortgage, unadjudicated, and thereby subject the purchasers at the sale under the decree to a future inquiry into those rights, or was the decree final, as respects the property sold thereunder, and do the purchasers, the Burlington, Cedar Rapids and. Northern Railway Company, hold the property free from the lien of the second mortgage?

The answer to these questions must be found in the allegations and proofs upon which the decree was based, as well as in the terms of the decree itself.

The record shows that all the parties to be affected by the decree were before the court — the Burlington, Cedar Rapids and Minnesota Railway Company as a mortgage debtor in default, and the trustees in the several mortgages. The property against which the proceedings were aimed was a railroad consisting of a main road and several branches. That the railway company was insolvent and utterly unable to satisfy decrees for the payment of money was evident.

In such circumstances what kind of a decree would be probable, and in the natural course of events? Would it not be expected that the proceedings would eventuate in a sale, in such a way as to dispose of the questions raised in the several cases, and to vest in the. purchasers an unincumbered title to the entire railway system?

We learn from the pleadings and evidence that such a plan of sale was apparently pursued, and resulted in the organization of a new company whose mortgage bonds and stock were distributed among the original bondholders upon terms satis-

factory to all, including a number of those who likewise held bonds secured by the income mortgage. The sales were reported to the court, and, with the deeds in pursuance thereof, were duly approved. The new company went into possession and management of the railroad and branches, and has increased largely their value by important extensions. The bonds and stock of the new company, it is safe to presume, have gone largely into new hands. The possession and title of the Burlington, Cedar Rapids and Northern Railway Company remained undisturbed and unchallenged till April, 1883 — a period of more than seven years — when the petition of certain alleged bondholders under the income mortgage was filed, asking leave to file what is termed "an amended and supplemental cross-bill in the nature of a bill of revivor and supplement," the avowed purpose of which is to have the title of the Burlington, Cedar Rapids and Northern Railway Company declared subject to the lien of the income mortgage; to have the mortgage issued in pursuance of the plan of reorganization declared void, as respects the main line; and to hold that company to account for the earnings during the period of its possession.

To constrain a court of equity to grant relief so apparently inconsistent with the previous proceedings, and so destructive of the rights of persons who have since become interested, the case presented should be clear and free from doubt.

What, then, are the reasons urged in favor of the complainant in the amended and supplemental cross-bill?

It is claimed, in the first place, that the Farmers' Loan and Trust Company, a party in the cause as trustee named in the income and equipment mortgage, had an equitable right to redeem, and that as the decree of October, 1875, contained no declaration or recital that said trustee was barred of the equity of redemption, and as no time was given to it to redeem from the first mortgages, the rights of the trustee and of the income bondholders were wholly unaffected by the decree and by the sales in accordance therewith. In other words, the proposition is that, in a decree which orders a sale of the property to pay the first mortgage debt, an express order cutting off the

equity of redemption of a junior mortgagee, although a party to the suit, is necessary to divest the latter of his lien and of his right of redemption.

We are unwilling to accept this as a sound statement of the law, or, at all events, to concede it as invariably true. Where a junior mortgagee is a party defendant to a foreclosure bill in which, as in the present case, there is a prayer that he be decreed to redeem, and where the priority of the plaintiff's mortgage is found or conceded, and a sale is ordered in default of payment, declaring the right of the debtor to redeem to be forever barred, we do not deem a similar order as to right of redemption by the junior mortgagee to be substantially or even formally necessary. He has, of course, a right to redeem, but if he chooses not to assert such right, and stands by while the sale is made and confirmed, he must in equity be deemed to have waived his right.

We think the law was correctly stated by Mr. Justice Matthews in *Chicago & Vincennes Railroad* v. *Fosdick*, 106 U. S. 47, 68, where he said : " In case the proceeding results finally in a sale of the mortgaged premises, the sale is made free from the equity of redemption of the mortgagor, and all holders of junior incumbrances, if made parties to the suit, and is of the whole premises, when necessary to the payment of the amount due, or when the property is not properly divisible; it conveys a clear and absolute title as against all parties to the suit, or their privies, and the proceeds of the sale are distributed after payment of the amount due, for non-payment of which the sale was ordered, in satisfaction of the unpaid debt remaining, whether due or not."

So in *Lansing* v. *Goelet*, 9 Cowen, 346, 391, in which case there was an elaborate examination of the subject, the law was expressed in the following terms : " A judicial sale of the estate under the decree of the court, if the court has power to make the decree, whether it be in the form of a decree of sale preceded by a formal decree of foreclosure, or in the form of a decree of sale without a formal decree of foreclosure, effectually bars the right of the mortgagor to redeem; and the purchaser will hold it under the title he acquires to it by virtue

of the sale and conveyance he receives from the master, free and discharged from the equity of redemption. The purchase money then stands in the place of the estate, and will be applicable, as that was, first, to the satisfaction of the debt of the mortgagee, and the overplus and residue, if any, to the use of the mortgagor."

In 3 Pomeroy's Eq. Jur., § 1228, it is said that "the sale under a valid decree immediately cuts off, bars, and forecloses the rights of the mortgagor and of all subsequent grantees, owners, incumbrancers, and other persons interested, who were made parties defendant, and of all grantees, owners, and incumbrancers subsequent to the filing of a notice of *lis pendens*, although not made defendants."

It is contended in the next place that the rights of the junior mortgagee were saved by the express terms of the decree. The language relied upon was as follows: "And this decree is made subject to the rights of any intervening creditors now before this court, and the claim of the Farmers' Loan and Trust Company in the income and equipment mortgage to any of the cars and machinery named in that mortgage is to be submitted to this court in term time or vacation, as soon as counsel can agree on the facts in relation thereto." And again: "The court reserves the power to make further orders and directions; and no sale under this decree is to be binding until reported to the court for its approval."

Reliance is also placed upon the language of a subsequent order of the court, on October 26, 1876, in which, after affirming the sales and conveyances, it is said that said order "shall in nowise be taken to affect any claim, right, interest, or lien upon or to the property sold and conveyed by said master's deeds, now pending in this court, but that the said claim, rights, interests, and liens, are merely reserved, subject to future adjudication, and the said grantees in said deeds take the property hereby conveyed subject thereto."

The construction sought to be put upon this language, namely, that the court thereby intended to make a future disposition of the claims of the income and equipment mort-

gage one of the terms of the sale, is an admissible one, and, if it had been urged by timely action, it might properly have been adopted. But, as we have seen, those interested under the income and equipment mortgage not only failed to embrace the opportunity afforded to redeem as against the first mortgages, but suspended all action for a period of more than seven years. The condition of the record, as it existed before the filing of the amended and supplemental cross-bill, disclosed no intention to ask for a redemption, and even if the condition of the case prior to the sale and the terms of the decree left it a debatable matter whether the court intended to bar any right of redemption on the part of the junior mortgage, we think the contemporaneous and subsequent conduct of those interested in that mortgage deprives them of any right, after so long a period, to demand the assistance of a court of equity as against the purchasers and those who may have become interested with them.

We do not find it necessary to determine whether those of the bondholders under the income and equipment mortgage, and who also held first mortgage bonds, estopped themselves from asserting a right of redemption by accepting the new securities issued under the plan of reorganization. If, indeed, those so acting constituted all of the income bondholders, such a determination might be a ready method of disposing of the entire case. But as there seems to have been some who did not receive the new bonds in payment of first mortgage bonds, and would not, therefore, be brought within the range of the suggested estoppel, we prefer to pass by that question and consider whether all the holders of bonds under the income and equipment mortgage did not, by their inaction and acquiescence under the decree and sale, lose any right to redeem which they might otherwise have had as against the purchasers.

As we have seen, the Farmers' Loan and Trust Company, in its answer and cross-bill, as they stood before and at the time of the decree of October 30, 1875, did not assert any right or any intention to redeem, although in the bill an opportunity was afforded it so to do. It restricted its allega-

tions and claims for relief entirely to the engines and box cars. When the cases, as well the case of Frost, trustee, in respect to the foreclosure of the main line, and the other consolidated bills of foreclosure, came on to be heard, there was no assertion of any right or wish to redeem. There was record notice to the said trustee that a plan of sale and reorganization was intended which contemplated the issue of new stock and bonds. Not only was there a tacit acquiescence in the proceedings, but no sign of any intention to disturb the title of the purchasers was given until more than seven years had elapsed, during which period large expenditures were made, and, beyond a doubt, third persons had become interested on the faith of that title.

The principle upon which this ground of defence rests has been so often vindicated and applied by this court that we do not feel it necessary to further enforce it by argument, nor to cite cases so numerous. It is sufficient to refer to *Abraham* v. *Ordway*, 158 U. S. 416.

The rule is aptly expressed by 2 Pomeroy's Eq. Jur., § 816, as follows: " Acquiescence is an important factor in determining equitable rights and remedies in obedience to the maxims: He who seeks equity must do equity, and he who comes into equity must come with clean hands. Even when it does not work a true estoppel upon rights of property or of contract, it may operate in analogy to estoppel — may produce a *quasi* estoppel — upon the rights of remedy." And in § 965: " When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity. Even where there has been no act nor language

properly amounting to an acquiescence, a mere delay, a mere suffering time to elapse unreasonably, may of itself be a reason why courts of equity refuse to exercise their jurisdiction in cases of actual and constructive fraud, as well as in other instances. It has always been a principle of equity to discourage stale demands; laches are often a defence wholly independent of the statute of limitations."

As these views lead to the conclusion that the so-called amended and supplemental cross-bill, filed by Simmons, trustee, in April, 1883, cannot be maintained against the Burlington, Cedar Rapids and Northern Railway Company, nor against the trustee named in the new mortgage, it is unnecessary for us to enter into questions that arose affecting the title of alleged bondholders under the income and equipment mortgage, and with respect to which a cross-appeal was taken from the decree of the court below.

It may be that whatever questions existed between the Burlington, Cedar Rapids and Minnesota Railway Company and the trustee of the income and equipment mortgage were left open as between them, if, indeed, any property remained to which a decree of foreclosure could apply. As to this we express no opinion. But so far as the Burlington, Cedar Rapids and Northern Railway Company and the Farmers' Loan and Trust Company, trustee, under the new mortgage, are concerned, the so-called amended and supplemental cross-bill should be dismissed.

*The decree of the court below, under the said amended and supplemental cross-bill, is therefore reversed, and the record remitted with directions to enter a decree in accordance with this opinion, the costs in the court below and in this court to be paid by the appellants in No. 11.*

MR. JUSTICE BREWER took no part in the hearing or decision of the case.