Howry, J.,
delivered the opinion of the court:
This is an action to recover salary amounting to $6,010.90, which, under the act of August 7, 1882 (22 Stat. L., 346), was provided for the payment of a special inspector of foreign steam vessels. The time for which salary is claimed covers three years and two days.
While the claimant was holding the office and performing the duties of local inspector of hulls of steam vessels at the port of New Orleans, and receiving the salary thereof, $2,250 per annum, the Secretary of the Treasury sent the claimant a letter, as follows:
“Treasury Department,
“Ofeice of the Secretary,
Washington, D. G., May 15, 1891.
“Mr. John Glavey,

“New Orleans, La.

“Sir: Under the provisions of an act of -Congress approved August 7, 1882, entitled ‘ An act to amend section 4400 of title 52 of the Revised Statutes of the United States, concerning the regulation of steam vessels, you are hereby appointed to serve in connection withyour appointment as local inspector of hulls of steam vessels as a special inspector of foreign steam vessels, without additional compensation, for the port of New Orleans, La., the appointment to take effect from date of oath.
“Respectfully, yours,
Charles Foster, Secretary.”
*251 The claimant took the oath as directed and entered upon the discharge of the duties pertaining to the office. He was not required to nor did he give the official bond provided for by section 1 of the act nor did he offer to give bond. He served as such special inspector of foreign steam vessels from May 25, 1891, to May 27, 1894, a period of over three years, during which time he made no demand upon the Secretary of the Treasury or any other officer of the Government for the salary or other compensation for such service; nor did he during that period make any protest or objection to the Secretary of the Treasury or to any other officer of the Government concerning the performance of the service as such special inspector in connection with his appointment as local inspector without additional compensation.
December 15, 1893, the Acting Secretary of the Treasury, as set forth in the findings, requested the claimant to tender his resignation as “inspector of hulls of steam vessels for the district of Louisiana, also as special inspector of foreign steam vessels for the port of New Orleans, La., to take effect upon the appointment and qualification of your successor;” and thereafter, May 28, 1894, his duly appointed and qualified successor as local inspector of hulls of steam vessels entered upon the discharge of the duties of said office, after which the claimant also ceased to perform the duties of special inspector of foreign steam vessels.
The claimant proceeds upon the theory that by that act of the Secretary of the Treasury he was duly appointed to the office of special inspector of foreign steam vessels, and that having taken the oath in the usual form and entered upon and discharged the duties pertaining to the office, he is entitled to the salary provided therefor by section 2 of the act, notwithstanding the conditions stated in the letter of the Secretary, and notwithstanding, also, that he was not required to nor did he give the official bond provided for as aforesaid.
Whether the claimant’s right to receive the salary sued for be measured by the terms of the letter of the Secretary of the Treasury or by his conduct in assuming to act, in connection with his other duties, as a special inspector of foreign steam vessels without additional compensation, in either event it does not seem proper to hold that this claim has any merit.
*252 The official annual report of the Supervising Inspector-General for the fiscal year ending- June 30, 1889, contained a recommendation that sections 2 to 6, inclusive, of the amendment to section 4400, Revised Statutes, which provided a separate set of officers and clerks for the inspection of foreign steam vessels, be repealed, because the reasons for the creation of such offices had ceased to exist after the passage of the act of June 19, 1886, which abolished the fees formerly collected from domestic steam vessels and their licensed officers. These fees were permanently appropriated previous to that time for the support of the domestic inspection service and could not lawfully be diverted therefrom for the support of officers and clerks inspecting foreign steam vessels, from whom no fees could legally be collected for such support.
- The Supervising Inspector-General is an officer of the Treasury, and his report to the Secretary became a part of the official archives relating- to the business of the Department. By that report it was further made to appear that a saving could be made of all salaries paid inspectors of foreign steam vessels (except as to the port of New York) by uniting these with those of local inspectors of hulls of steam vessels. It is true that the recommendation of the Secretary of the Treasury for the repeal -of the law suggested by the report of his subordinate was not immediately acted upon by Congress, but the fact remains that at certain ports, including New Orleans, the duty of inspectors of foreign steam vessels had practically ceased. Thus, for the fiscal year ended June 30, 1890, the services of special inspectors of foreign steam vessels at the ports where no necessity existed for regular appointments were discontinued and local inspectors were assigned to inspect the foreign vessels without extra pay. An incumbent at New Orleans by regular appointment under the amendment to section 4400 of the Revised Statutes was removed during that fiscal year because tire duties were nominal.
In that part of his finance report to Congress relating to the foreign inspection service Secretary Windom, in 1889, expressly stated that the offices involved in the inspection of foreign steam vessels were virtually sinecures, and that the services of three of these officers had been dispensed with. (Rep. Sec. Tr., 1st sess. 51st Cong.) One of these officers so *253 discontinued was the incumbent at New Orleans, as above stated. Congress was slow in repealing- the law, but sanctioned the steps taken by the Secretary in the interest of public economy as far as silence and acquiescence in his action could go. In this condition of affairs Secretary Foster made the request of the claimant out of which this contro-vers}r has arisen.
In the transaction of the businéss of the Government judicial notice can be taken of the official reports and acts of the Executive Departments unless. for reasons of public interest and policy secrecy is maintained as to them by the heads of departments. With knowledge of the facts which these reports and acts of the Treasury Department afford to us, the question then arises whether in the matter before us the Secretary of the Treasury had the power to devolve the duties of special inspectors of foreign steam vessels without additional compensation upon local inspectors of hulls of steam vessels at the ports of entry where the necessity for regular separate officers no longer existed.
That the Secretary had no power to compel the local inspectoi-s to serve without extra compensation is a matter not necessary to discuss, because no such attempt was made. Compulsory service does not enter into the case at all. And it may even be conceded, for the purposes of the argument, that the incumbent of any one office can not be required to perform duties, however slight, belonging to another office without the corresponding right to claim whatever salary there may be attached to the second office. But it is not uncommon in the business of executive administration for the incumbent of an office to be requested to discharge the duties of another office in connection with the duties of his own. Nor is it uncommon for these dual duties to be performed without any thought of claiming or supposed right to claim the salary attached to both. Instances are not wanting — in fact, they are numerous — where in the exigencies of the public service double duties are assigned to particular officials (above • the grade of clerks) without the corresponding right on the part of the official thus assigned to claim compensation for the second office. There is nothing dangerous in this practice, since an official may ordinarily decline to take upon himself *254 the obligations and duties of an office different from his own without some agreement or understanding for additional compensation. This claimant undertook to specially discharge new duties temporarily without any expectation of a new commission. He complied with the Secretary’s request, and accepted the special service upon the terms requested. The request was unattended by anything indicating duress, and was merely the equivalent of a detail to service. It was a conditional appointment, and therefore no such appointment as conferred title to the office. Claimant looked upon it in this light by not giving the bond which the statute imposed, or even offering to give it, at any time during the period of his service. The Secretary had no power under the law to dispense with a bond. His failure to prescribe the conditions of a bond establishes the belief that he never intended to make complete claimant’s appointment to the office for which salary is now claimed. The oath taken by claimant was merely the incident to the discharge of the duties, and could not in itself make him a de ¿jure officer. As an officer defacto he can claim nothing for himself. (The People v. Weber, 89 Ill., 348.) The decisions are uniform that one claiming a salary must prove his legal title to the office and that an officer de facto can not maintain an action for salary. (Romero v. The United States, 24 C. Cls. R., 336; see also Dorsey v. Smyth, 28 Cal., 25; Stratton v. Oulten, 28 Cal., 51; Morton v. Tiernan, 30 Barb., 193; Bennett's Case, 19 C. Cls. B,., 388.)
It is a matter of no consequence in determining the rights of the claimant what action, if any, the Secretary of the Treasury would have taken for the inspection of steam vessels had claimant not rendered the special service. Whether the Secretary would have omitted to have a few vessels inspected at so high a price by neglecting to fill the offices, or would have hastened the repeal of the law giving such large salaries for services which time had made so insignificant by urging the matter upon the attention of Congress more persistently, we do not certainly know. It is reasonable, however, to suppose that measures in the interest of an economical administration of the affairs of the Department would have been taken but for the conduct of the claimant. In an}r event local inspectors of hulls of steam vessels would probably not have *255 been invited to the feast of a second office having such incon-siderabl eduties while enjoying the emoluments of those offices which they already held.
If this were a transaction between individuals it could not stand the test which the claimant seeks to have applied in his behalf. His silence operated as a fraud in fact. Had he informed the Secretary that he could not accept the special service indicated upon the terms placed before him by the Secretary’s letter, other means, doubtless, would have been used to obviate the needless expense involved in a regular appointment. But claimant made no protest, gave out no intimation that he expected compensation, led the Secretary to believe that the conditions imposed by the letter assigning him to duty had been accepted, thus misleading his superior officer for a period of several years. The claim, then, is the result of a studied silence, apparently, by means of. which claimant seems to have thought he might thereafter more successfully claim for a longer period of salary. In this view what else can such a fraud in fact be considered unless it be deemed a fraud in law? If it was an afterthought, there can be no recovery under the well-settled principle of law that if a person renders a service without intent to charge for the same, and this is so understood by the other party, no recovery can be had for such services. (Goode v. United States, 25 C. Cls. R., 267.) If there was a reserved intention on the part of the claimant to claim the salary, he is upon every principle of law and equity estopped from the assertion of the demand. Acquiescence and waiver are always questions of fact. (Pence v. Langdon, 99 U. S. R., 578-581.) The cases where acquiescence and waiver operate in analogy to estoppel are too numerous to cite. Mr. Justice Shiras declares the rule aptly expressed (citing 2 Pom. Eq. Jur., par. 965), as follows:
“ When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights and of all the material facts freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly permits the other party to deal with the«subject-mattér under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby rea *256 sonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity. Even where there has been no act nor language properly amounting to an acquiescence, a mere delay, a mere suffering time to elapse unreasonably, may of itself be a reason why courts of equity refuse to exercise their jurisdiction in cases of actual and constructive fraud, as well as in other instances. It has always been a principle of equity to discourage stale demands; laches are often a defense wholly independent of the statute of limitations.” (Simmons v. Burlington, etc., Railway Company, 159 U. S. R., 291.)
That the Government can, in proper cases, invoke the doctrine of acquiescence and waiver is too plain to argue. That it can do so on a claim for salary to an office with insignificant duties undertaken and performed by another officer detailed to their temporary discharge under the facts here is equally clear. Salary is not such a sacred thing that a person should be permitted to impose upon his Government under the circumstances shown here in order to obtain its payment. Estop-pel had no application in People ex rel. Satterlee v. Board of Police (75 N. Y., 38), because in that case there was no question of the full and complete regularity of the appointment and of the performance of every undiminished duty under it, and the court held that an agreement to take less than the salary fixed by law did not establish a binding contract. Both elements appearing in that case are wanting here — the appointment of the claimant having conditions which rendered it a mere detail to service incident to analogous duties then being performed by him on the ground at the time in another office, and the service under the detail being nominal and perfunctory.
The proposition that under a provision of the act of May 1, 1881 (23 Stat. L., 17), claimant could not accept voluntary service for the Government is not applicable, because that act relates to employees in the Indian Office. Claimant could not render voluntary service and now be heard to say he is entitled to pay for service so renderd in his own violation of the law, even if that act related to other branches of the public service.
The petition is dismissed.