Peelle, J.,
delivered the opinion of the court:''
The claimant, an enlisted man in the United States Navy, claims reimbursement for subsistence on the journejr from Taku, .China, the place of his discharge, to New York, the place of his enlistment, together with reimbursement for railroad fare from San Francisco to New York, amounting to $126.25.
The claimant enlisted in the Navy on board the U. S. S. Vermont; at New York, August 17, 1897, for a term of three years, and after passing the required physical examination he entered upon the discharge of his duties.
Prior to the expiration of his enlistment, to wit, October 7, 1897, and while the Brooklyn, to which vessel he had been transferred September 30, 1897, and on which he was then serving, was lying at Hampton Roads, Virginia, under orders from the Navjr Department to proceed to the Asiatic waters, the claimant, then serving as mess attendant,- voluntarily, and *138 with the knowledge of his rights, filled out and signed a communication as follows:
“To the Chief of the Buiieau of Navigation

uNavy Deyxirtment, Washington, D. G.:

“I, William T. Hunt, serving as a mess attendant in the U. S. Navy, request to be allowed to remain on board the U. S. S. Brooklyn, as it is mjr intention to reenlist, in the Navy immediately upon the expiration of mjr present enlistment,- and to continue in the ünited States naval service.
“Should this request be granted, and I fail to reenlist upon the expiration of my present enlistment, I further request to be discharged in whatever port 1 may then be; and if so discharged I hereby waive all claim to transportation.
“This waiver applies to my present enlistment only.
“ William T. Hunt,
“JY Att., U. 8. Wavy, O. 8. G. No.--.
“Witness:
“D. Ii. Mai-iaN,

“Lieut. Comdr., IT. 8. Navy.

“U. S. S. BeooklyN, Hampton Roads, Va., Oot. 7th, 1890.
“(See extract from Navy Regulations on other side.)”
The claimant having signed the waiver aforesaid, was permitted to remain on board the Brooklyn and ship for Asiatic waters, where he served until discharged .from the service, August 17, 1900, at Taku, China. At the time of his discharge he was recommended for reenlistment, but refusing to reenlist, he was given what was termed an ordinary discharge. November 15 thereafter, however, he was given an honorable discharge.
After his discharge the claimant was, as a matter of favor, given transportation on the U. S. transport Indiana to Nagasaki, Japan, and after remaining there twelve days, was, in like manner, given transportation on the U. S. transport Grant to San Francisco, Cal.; but he was denied subsistence and any commutation therefor while en route from the place of his discharge to New York, as he was also transportation from San Francisco to New York;
The question presented is, has the claimant by virtue of the waiver so signed estopped himself from claiming reimbursement for the transportation and subsistence so denied him?
The Revised Statutes, section 1422, provides:
*139 ‘ ‘ Sec. 1122. That it shall be the duty of the commanding-officer of any fleet, squadron, or vessel acting- singly, when on service, to send to an Atlantic or to a Pacific port of the U nited States, as their enlistment ma}7 haiTe occurred on either the Atlantic or Pacific coast of the United States, in some public or other vessel, all pett}7 officers and persons of inferior ratings desiring to go there at the expiration of their terms of enlistment, or as soon thereafter as may be, unless, in his opinion, the detention of such persons for a longer period should be essential to the public interests, in which case ho may detain them, or anjr of them, until the vessel to which they belong shall return to such Atlantic or Pacific port. All persons enlisted without the limits of the United States may be discharged, on the expiration of their enlistment, either in a foreign port or in a port of the United States, or they may be detained as above provided beyond the term of their enlistment; and that all persons sent home, or detained bj- a commanding officer, according to the provisions of this act, shall be subject in all respects to the laws and regulations for the government of the Naiy until their return to an Atlantic or Pacific port and their regular discharge; and all persons so detained by such officer, or reentering to serve until the return to an Atlantic or Pacific port of the vessel to which they belong, shall in no case be held in service more than thirty days after their arrival in said port; and that all persons who shall be so detained beyond .their terms of enlistment, or who shall after the termination of their enlistment, voluntarily reenter to serve until the return to an Atlantic or Pacific port of the vessel to which they belong, and their regular discharge therefrom, shall receive for the time during which they ai-e so detained, or shall so serve beyond their original terms of enlistment, an addition of one-fourth of their former pay: Provided, That the shipping articles shall hereafter contain the substance of this section.”
Article 806 of the Naval-Regulations, 1896, provides:
“(1) No person shall be discharged outside of the United States unless bj7 order of the Navy Department, or in accordance with the sentence of a general court-martial, with the folio-wing exceptions:
“ (a) Upon the expiration of the term of enlistment of a man enlisted within the United States, whose detention on board is not essential to the public interests, he maj7 be discharged upon his own written request, by order of the senior officer present; provided said request states that the applicant waives all claim for transportation at public expense and- all consular aid.
“ (i) Men who have enlisted outside of the United States, upon the expiration of their terms of enlistment or the recommendation of a board of survey.
*140 “ (a) Men whose discharge by purchase has been authorized.
“ (2) Whenever a man who enlisted within the United States is discharged in a foreign port, or a man who enlisted in an Atlantic port is discharged in a Pacific port of the United States, or a man who enlisted in a Pacific port is discharged in an Atlantic port of the United States, in accordance with his written request, in which he waives all claim to transportation to the United States or to the Pacific or Atlantic coasts of the United States, the original of such request must be forwarded to. the Bureau of Navigation, and a duplicate thereof must bo entered in full after the last quarterly entry on the enlistment record of the man, which duplicate must be signed by the applicant in the presence of a commissoned officer of the Navy, who must also sign this record as witness to such signature.
‘ ‘ (3) All other written requests of enlisted men regarding1 discharge while absent from the United States, or from the coasts of the United States, where they may have enlisted, in which claims to transportation at Government expense may be waived, must, if granted, be entered on the enlistment record in the same manner. ”
.This claim was never presented to the Treasury Department for payment because, as the claimant’s counsel say, the Comptroller had previously hold “that section 1422, Revised Statutes, gave no right to traveling expenses upon discharge. ” (5 Comp. Dec., 514.)'
The view of the Comptroller in respect of the rights of discharged seamen in a foreign port is thus expressed:
“There is no law which authorizes the payment to enlisted men of the Navy of either traveling expenses or mileage on their discharge from the place of discharge to the place of enlistment, the law only authorizing transportation to be furnished in kind, and then only to those who desire to return to the United States.”
A careful reading of section 1422 convinces us of the correctness of the views of the Comptroller, as there is no provision or clause in that section authorizing the payment of expenses for travel or subsistence to petty officers or.enlisted men on their discharge; that only transportation in kind is authorized, and this onty, as the Comptroller says, “to those who desire to return to the United States.”
The claimant was g'iven transportation in kind to California, and if we should assume that but for the waiver he signed *141 be would have been entitled to transportation from San Francisco to New York, as well as reimbursement for subsistence en route from Talcu to New York, still we think the claimant by his waiver is estopped from claiming either, and this was the view of the naval officers having the matter in charge.
The claimant while serving on the Brooklyn in Hampton Boads, as he himself testifies, knew what his rights were; knew the contents of regulation 806, set forth above; knew that the Brooklyn had been ordered to the Asiatic waters and he desired to remain on board for that cruise, and in consideration thereof he signed the waiver in question.
The waiver was, as required by regulations, paragraph 2, signed by the claimant in presence of Lieut. Commander D. H. Mahan, U. S. Navy, who also witnessed claimant’s signature thereto, and the waiver was then forwarded to the Bureau of Navigation, so that the terms of the regulation made to cany into effect the provisions of section 1422 were fully complied with.
The requirement of the waiver as one of the conditions of remaining- on board the vessel was, under the circumstances then existing, in the interest of the public service, and it was given without coercion or moral suasion, so far as appears of record.
The claimant contends, and so testifies, that he signed the waiver under promise of the executive officer of the ship that he should be given the permanent place of yoeman, but that officer denies that any such promise was made; and whether made or not is immaterial in this case, as it is not shown to have formed any part of the waiver addressed to the chief of the Bureau of Navigation.
The contention that the waiver is invalid because under section 1422 the commanding officer could have detained the claimant in the foreign port until the return of the vessel on which he was serving to the United States is not well taken, for the purpose of the waiver was to secure voluntary, not involuntary, enlistments for service in an expectant critical time; that is to say, the purpose of the waiver was to avoid compulsion in order that the Department might secure the voluntary enlistment of men for sendee; and that in case he *142 did not reenlist the Government might be saved the expense of transporting him home from a distant foreign port; and the signing of the waiver is of itself the best evidence that no compulsion or coercion was used in its procurement.
The claimant cites the case of Rush v. United States (35 C. Cls. R., 223) as a case similar in some respects to the present one, but in that case the waiver was of extra compensation arising under an express statute, and the court, after commenting on the various decisions there cited respecting the salary of public officers, holding in effect that it was not within the control of the appointing power to increase or diminish the salary of an officer provided bjr law, says:
“ While the decision cited, and many others of like pui’port, refer to the salary or compensation of officers fixed by law, the reason for the rule is equally aiiplicable to the extra compensation also fixed by law for services rendered within the line of official duty, and in the interest of the public service should stand upon the same basis. ”
The waiver in the present case was simply that of transportation to the United States from any port in which lie might be discharged at the expiration of his enlistment, if for any reason he failed to reenlist, and while the statute accorded to him the right of transportation in kind from the place of discharge to the place of his enlistment, it was a personal right which he could and did waive on his failure to comply with the terms of his voluntary waiver.
In the case of Glavey v. United States (182 U. S., 595) the judgment of this court (35 C. Cls. R., 242) was reversed on the ground that the stipulation that the claimant, who was a local inspector, should exercise the functions of his office of special inspector of foreign steam vessels without additional compensation, was invalid under the statute prescribing the salary he should receive, and that such waiver was against public policy and imposed no legal obligation upon him.
Such is not the case here, for the Department,- under the regulations, had the right to require the waiver as a condition of remaining on the vessel, the waiver so signed was in the interest of the public service, and the claimant’s petition should therefore be and the same is dismissed.