**HARVEY RADIO LABORATORIES, Inc. v. UNITED STATES.**
No. 49870.

United States Court of Claims.
Oct. 6, 1953.

Bolling R. Powell, Jr., Washington, D. C., for plaintiff.

Bruce G. Sundlun, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

This is an action on a contract to recover the balance of the price stated in the contract, alleged to be due and unpaid. In April 1946, plaintiff and defendant entered into a letter contract whereby plaintiff agreed to develop and fabricate for defendant certain radar equipment for use in long range navigation. In February 1947, a definitive fixed-price contract superseding the letter contract was executed, providing for a total contract price of $1,146,780.54. The contract specified that the prices contained therein were subject to revision in accordance with the provisions of Article 40 (finding 13). Article 40 required the contractor to submit to the contracting officer, within sixty days after the completion or termination of the contract, a detailed statement of the costs of performing the contract. It further provided that "Upon written demand of the Contracting Officer, made at any time within thirty days after the submission of such statement, the Contractor will negotiate to reduce the contract price to an amount representing fair and reasonable compensation for the performance of the contract."

By a joint motion of the parties, allowed by the court on December 5, 1951, the issue before the court at this time is limited to determining whether or not the provision for revision of the contract price has become or can still be made operative. Defendant concedes that if the contract price revision clause did not become or cannot now be made operative, plaintiff is entitled to recover the unpaid balance of the price stated in the contract, which has been stipulated to be $188,325.83.

Plaintiff contends that the making of a written demand by the contracting officer within the period specified by Article 40, after plaintiff submitted its statement of costs, was a condition precedent to any obligation upon it to negotiate a revision of the contract price; that no written demand was made by the contracting officer; and that as there was no waiver of the performance of the condition, plaintiff is not and cannot become obligated to negotiate to revise the contract price under the provisions of Article 40.

It is defendant's position that the parties by their conduct waived any requirement for written notice of price revision proceedings; that plaintiff engaged in negotiations for price revision; that plaintiff cannot insist upon compliance with the technical demand provision of Article 40 because it did not complete the contract prior to the submission of its statement of costs, as required by Article 40; and, finally, that to permit plaintiff to recover the entire price stated in the contract, without revision based on costs of performance, would be to work a forfeiture against defendant and to place an excessive penalty on the failure to comply with a technicality.

The facts are that plaintiff and defendant, acting through its agent Watson Laboratories of the Air Technical Services Command, Army Air Forces (hereinafter Watson), entered into a letter contract on April 3, 1946, by the terms of which plaintiff agreed to develop and fabricate for defendant low frequency radar equipment for use in long range navigation.

Under the terms of the letter contract, which originally authorized expenditures of $95,000, plaintiff agreed to enter into negotiations with the War Department looking toward the execution of a definitive contract which would contain a detailed delivery schedule, and prices, terms, and conditions as agreed to by the parties. Work proceeded under the letter contract throughout the remainder of

1946 and into 1947. Plaintiff gathered and transmitted to Watson the cost data necessary for the preparation of a definitive contract, and under date of February 12, 1947, a definitive contract was executed, superseding the letter contract.

This contract, which will be referred to herein as contract ac–76, required that plaintiff furnish and supply to the Government seven items (finding 10), for a total contract price of $1,146,780.54. Article 15(a), containing the items and prices, provided that "The prices specified herein are subject to revision in accordance with the provisions of Article 40." [1]

In April 1948, plaintiff wrote Watson that it expected to complete all of the items required by contract ac–76 within a few weeks, and suggested that early action be taken under the clause requiring redetermination of price prior to final payment. On May 7, 1948, Watson replied that there would be ample time before June 30,[2] to redetermine the price under the contract. On May 13, 1948, Watson advised plaintiff that in accordance with Article 40 it was necessary that certain cost information be furnished Watson. On May 18, plaintiff replied that at such time as all of the work was completed (then estimated as June 1), cost information would be prepared in accordance with Watson's May 13 letter and forwarded to Watson for appropriate study and review.

This exchange of correspondence was directed toward the submission by plaintiff of "a detailed statement of the costs of performing this contract" within sixty days after the completion of the contract, as required by Article 40. Both plaintiff and Watson were aware that the contract contained a price redetermination provision. Neither plaintiff nor Watson reviewed the terms of Article 40, however, and neither of them was specifically aware of the demand provisions of the Article. Plaintiff assumed that Watson would do whatever was necessary to invoke the provision for price revision, and Watson assumed that plaintiff would negotiate to reduce the contract price without written demand to do so. Watson followed the policy and custom, with regard to all of its contracts, of conducting price redeterminations in accordance with the spirit of the contract articles, without serving formal written demands to negotiate on the contractors.

This was the situation as it existed in May of 1948. The information, intentions, and understandings of the parties with respect to the price revision provisions of contract ac–76 remained unchanged from that time until September of 1949. What occurred in September of 1949 will be the subject of discussion hereinafter.

On November 24, 1948, plaintiff submitted what it termed "complete detailed cost information applicable to this contract [ac–76] from the date of its inception to final completion," stating that it was particularly interested in completing any final price negotiations under Article 40 of the contract prior to the end of the current fiscal year. This submission by plaintiff of what it considered to be the cost data, called for by the contract, constituted substantial performance by it in the first instance of the requirement of Article 40 that a detailed statement of the costs of performing the contract be submitted to the contracting officer within sixty days after completion of the contract, and was intended as such performance by plaintiff. We do not interpret Article 40 as precluding the defendant to call for further data or information as to costs, or to investigate and verify such cost statement of plaintiff before making the demand to negotiate a revision of the price stated in the contract under Article 40.

Article 40 of the contract reads in pertinent part:

" * * * Upon the written demand of the Contracting Officer,

---

1. Article 40 appears in full in finding 13.

2. The contract carried 1946 fund allotments which expired as of that date.

made at any time within thirty days after the submission of such statement, the Contractor will negotiate to reduce the contract price to an amount representing fair and reasonable compensation for the performance of the contract."

The contracting officer did not, either within thirty days or at any other time after the submission of plaintiff's statement of costs on November 24, 1948, make written demand that plaintiff negotiate to reduce the contract price. A preliminary examination of the cost data indicated to the contracting officer that plaintiff had been overpaid on contract ac–76, that is, that the total amount plaintiff had been paid under the contract exceeded the costs (plus profit) listed in the statement, by some $37,027.47. It also indicated that differences between plaintiff's accounting and auditing by the Boston Branch, Army Audit Agency, were such as to suggest the possibility of fraud on the part of plaintiff.

On February 9, 1949, the contracting officer advised the defendant's Auditor General that a preliminary review of the contractor's costs had been conducted in an effort to provide a basis for the negotiation of a revised price under the price redetermination article, but that the contracting officer was not satisfied that enough information had been obtained from the contractor or otherwise to justify further proceedings under the price clause. He requested that a searching and detailed audit be made of the contractor's costs for the years 1946–1948, adding that the contract had been completed on or about November 30, 1948.

On February 14, 1949, the contracting officer advised plaintiff, in connection with the statement of costs submitted by it, that careful thought had been given to the information obtained by the contracting officer's representatives, in an effort to expedite redetermination of the contract price pursuant to the terms of Article 40, but stated that the pre-liminary review of the cost information in hand did not afford sufficient basis to protect adequately the Government's interests, nor "would it be equitable to the contractor for the purpose to attempt to negotiate a revised price on the information elicited to date." Plaintiff was further advised that the Auditor General had been requested to conduct an audit of plaintiff's costs under contract ac–76, and it was suggested that further negotiations be held in abeyance pending receipt of the audit report.

On February 23, 1949, plaintiff wrote the contracting officer indicating surprise and concern over the necessity for conducting a detailed audit prior to negotiating final settlement of the price under contract ac–76. Plaintiff stated, in part, that "Original commitments from your office indicated that the entire matter could be closed prior to December 31, 1948, and on or about the middle of December, we were advised that final negotiations would be delayed until January 22nd. It was the opinion of your office that a final negotiated settlement by this date would still permit us to incorporate the final results of negotiation into year-end audit adjustments prior to the publication of our year-end statements. With these understandings I was convinced that a mutually agreeable settlement [as to the contract price] could be accomplished before the end of January 1949."

On March 3, 1949, the contracting officer advised plaintiff that the decision to require an audit "in order to lay the basis for the proper negotiation of a revised over-all price for the contract" had been reached reluctantly but with great objectivity. The audit of plaintiff's costs on contract ac–76 was begun on April 9, 1949, and continued until August 9 of that year. During the latter part of July, Watson wired plaintiff that the auditor's report was expected soon, and suggested that "negotiation conferences" be scheduled on contract ac–76.[3]

3. Plaintiff also had two other contracts with defendant relating to LF Loran (see finding 8) which were to be discussed at the suggested conference.

A conference for price revision negotiation was held at plaintiff's offices on August 23, 1949. When discussion of the auditor's report began, plaintiff's president raised a question as to the contracting officer's approach to the negotiations for price redetermination, and sought to justify his position by reference to the terms of the contract. He was, through mistake, handed a preliminary draft of the contract, which did not contain provisions for price redetermination. He then stated that the contract was a fixed-price contract, and that Watson consequently owed plaintiff the unpaid balance of the contract price. Plaintiff's president was shown a true copy of contract ac–76, containing Article 40, but he nevertheless continued to maintain that it was a fixed-price contract.

It became apparent, after further discussion of the auditor's report, that plaintiff's accountant had had insufficient opportunity to familiarize himself with the contents of the report of the defendant's auditor, and the conference was adjourned until plaintiff's accountant had an opportunity to review the report. It was never reconvened because plaintiff declined to proceed further with the price negotiation proceeding.

On September 9, 1949, plaintiff's president wrote the contracting officer that attempts to discuss the provisions of contract ac–76 relating to renegotiation of the contract price at the August 23 conference had been unsatisfactory to plaintiff, and that plaintiff had therefore sought legal advice as to the proper construction of the price revision provisions. After pointing out that plaintiff's detailed statement of the costs of performing the contract had been submitted on November 24, 1948, and that no written demand to negotiate had been made by the contracting officer within thirty days thereafter, plaintiff stated:

> "We are now advised by our attorney that, since the Contracting Officer made no written demand for renegotiation of the contract price within the time specified by Article 40(a) of the contract, we are under no obligation to renegotiate as to the price, and that the contract has thereby become, in substance, a fixed price contract * * *. * * * it now appears that * * * the Government owes us the unpaid balance of the contract price. * * *"

Plaintiff contends that it was not and is not now obligated to negotiate to reduce the contract price, because of the failure of the contracting officer to perform the condition precedent to its obligation to do so. Consequently, plaintiff asserts, it is entitled to recover the unpaid balance of the contract price. Defendant concedes that formal written demand to negotiate was not made within thirty days after the submission by plaintiff of its statement of costs, but argues that because of the course of conduct of the parties during the period from November 24, 1948, the date of submission of the plaintiff's statement, until September 9, 1949, plaintiff has waived or is estopped to rely upon the requirement of Article 40, pertaining to formal written demand.

Under the terms of Article 40 written demand could and perhaps should have been made, within thirty days after November 24, 1948, that the contractor negotiate to reduce the contract price to an amount representing fair and reasonable compensation. The making of such a demand was a condition precedent to plaintiff's obligation to negotiate, and we do not understand defendant to contend to the contrary. However, we are of the opinion that, under the facts and circumstances, plaintiff's position in this case cannot be sustained.

█ As a general rule, conditions precedent must be exactly fulfilled, or no liability can arise on the promise which such conditions qualify. Williston on Contracts (Rev.Ed.) § 675. Under certain circumstances, however, it is equally well settled that the promise may be enforced despite the failure to perform the condition. Williston on Contracts (Rev.Ed.) § 676. The question for decision is, therefore, whether or not

those circumstances are present in the instant case.

We have been referred in the briefs to many cases and authorities on the principles of waiver and estoppel. While the general rules relating to the principles are well defined, each case must be read in the light of the facts surrounding it, and we feel that little would be gained from a discussion of the many citations. We content ourselves with applying to the facts of the case before us what we deem to be the controlling rule of law established from a review of the cited authorities.

■ The doctrine of equitable estoppel is gradually being extended by the courts to prevent a wrong being done "wherever, in good conscience and honest dealing," a repudiation of previous statements or declarations should not be permitted. Mahoning Investment Co. v. United States, 3 F.Supp. 622, 78 Ct.Cl. 231, certiorari denied 291 U.S. 675, 54 S.Ct. 526, 78 L.Ed. 1064. Morality and justice are the foundations of the doctrine, and conscience and equity its concern. Robinson v. Commissioner of Internal Revenue, 100 F.2d 847, 849; certiorari denied, 308 U.S. 567, 60 S.Ct. 81, 84 L.Ed. 476; Bergeron v. Mansour, 1 Cir., 152 F.2d 27, 30.

■ One of the many branches of the doctrine is that of acquiescence. When a party with knowledge or the means of knowledge of his rights and of the material facts does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or permits the other party to deal with the subject matter under the belief that the transaction has been recognized, or abstains for a considerable length of time from impeaching it, so that the other is reasonably induced to suppose that it is recognized,

there is acquiescence, and the transaction, though it be originally impeachable, becomes unimpeachable. Mahoning Investment Co. v. United States, supra;[4] Simmons v. Burlington, Cedar Rapids & Northern Railway Co., 159 U.S. 278, 291, 16 S.Ct. 1, 40 L.Ed. 150; First Federal Trust Co. v. First National Bank, 9 Cir., 297 F. 353, 356.

Plaintiff had the means of knowledge of its rights and of all the material facts, although it may not have been specifically conscious of the demand requirement of Article 40. The thirty-day period for making formal demand after plaintiff's submission of its statement expired on December 25, 1948. Until September 9, 1949, however, plaintiff was ready and willing to engage in negotiations for price revision, and the contracting officer so understood from plaintiff's actions and expressions.

During this period the contracting officer decided to require an audit, as he expressed it, "in order to lay the basis for the proper negotiation of a revised over-all price for the contract." Some months later, in July of 1949, plaintiff was advised that the auditor's report was expected soon, and it was suggested that negotiation conferences be scheduled on the contract. Such a conference was held on August 23, 1949, although, as we have previously indicated, it adjourned prior to reaching the stage of actual price redetermination of the contract.

■ The conclusion seems inescapable that the parties were engaged for a period of some nine or more months in negotiations leading up to and looking toward an ultimate revision of the price of contract ac–76 under the provisions of Article 40. We are clear that on the facts of the case plaintiff must be held to have acquiesced in these proceedings,

4. In the Mahoning case, 3 F.Supp. 622, 78 Ct.Cl. 231, at page 247, we said: " * * * where acquiescence is the ground of the estoppel there is usually no occasion for a change of the position of the party claiming the estoppel, and no change is made. All that is shown in these cases is that the acts of the party estopped were such as to mislead the party claiming the estoppel to continue in the course already begun, believing the same to be acceptable to the party estopped." The facts in the case at bar certainly meet this test.

and it is therefore estopped to assert the failure of the contracting officer to perform the condition precedent of making formal written demand to negotiate. It follows, from what we have said, that the provisions of Article 40 relating to redetermination of the contract price became operative. The evidence of record is sufficient to show that plaintiff engaged in negotiations for the revision of the price of the contract, and we have so found. Finding 39(e).

Defendant has asserted also that plaintiff failed to complete the contract prior to the submission of its detailed statement of costs. This argument is factually without merit. In view of the conclusion reached above, we need not pass upon the contention that to permit plaintiff to recover the stated contract price would work a forfeiture against defendant.

There are remaining in the case a number of issues not presently before the court. The case is therefore remanded to a commissioner for such further proceedings as may be necessary, in the light of our holding that the provisions of Article 40 relating to redetermination of the contract price have become operative.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.