**L. B. SAMFORD, INC.**

v.

**The UNITED STATES.**

No. 393–67.

United States Court of Claims.

Decided May 16, 1969.

O. P. Easterwood, Jr., Washington, D. C., attorney of record, for plaintiff. McNutt, Dudley & Easterwood, Washington, D. C., of counsel.

Mary M. Schroeder, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

### PER CURIAM:

This case was referred to Trial Commissioner Roald A. Hogenson with directions to make recommendations for conclusions of law on plaintiff's motion and defendant's cross-motion for summary judgment under Rule 99(c). The commissioner has done so in an opinion and report filed on October 11, 1968. Plaintiff filed a request for review by the court of the commissioner's report pursuant to Rules 99(e) and 55(b) (3) and the case has been submitted to the court thereon, together with defendant's response and oral argument of counsel. Since the court agrees with the commissioner's determinations, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for it judgment in this case.* It is therefore concluded that the decision of the Interior Board of Contract Appeals is supported by substantial evidence, is not arbitrary or capricious, and is correct as a matter of law. Plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and plaintiff's petition is dismissed.

### HOGENSON, Commissioner:

On plaintiff's motion and defendant's cross-motion for summary judgment, and the supporting briefs of the parties, this case presents issues pursuant to the standards prescribed by the Wunderlich Act, 41 U.S.C. §§ 321–322 (1964), as to the finality of a decision of the Interior Board of Contract Appeals, IBCA–523–10–65, 67–1 BCA ¶ 6223, affirmed on reconsideration, 67–2 BCA ¶ 6403. Two claims were submitted to and decided by the board, but its decision is challenged by plaintiff in this court only as to the denial of administrative Claim 1, in which plaintiff sought an additional payment under the terms of its contract with the defendant, claiming entitlement to have all materials (except overburden) excavated from certain areas of construction work treated as rock excavation, rather than 35 percent of such materials, as allowed and paid for by the contracting officer.

For the reasons hereinafter stated, it is my opinion that the board's decision should be sustained and plaintiff's petition dismissed.

On June 29, 1964, plaintiff, a Florida corporation, and defendant, acting by and through its Bureau of Sport Fisheries and Wildlife, Department of the Interior, entered into a contract (14–16–0008–695) for construction by plaintiff for a contract price of $511,532, of a hatchery building, several associated buildings, two residences, nine rearing or nursery ponds, and other facilities at the Greers Ferry National Fish Hatchery, Heber Springs, Arkansas.

The pertinent claim before the board, now on review before this court, concerns excavation of materials for construction of the ponds numbered 7, 8, and 9. All nine ponds (each being about 20 feet wide and 204 feet long) were located in filled land. The fill had been placed in the course of performance of a contract awarded by the Corps of Engineers, Department of the Army, to another contractor for construction of the Greers Ferry Dam. The fill had been covered with overburden in such a manner that the presence of large boulders was obscured. No contention is or was made that plaintiff knew or should have known prior to bidding that it would encounter boulders or pieces of rock in excess of sizes indicated in the specifications on which the contract was bid and awarded. In fact, the testimony of plaintiff's construction superintendent is uncontradicted that the condition of the overburden throughout the areas of all nine ponds was such that there was no indication that the materials excavated from ponds

---

* The concurring opinion of COLLINS, Judge, follows the opinion of the Trial Commissioner which has been adopted by the court.

7, 8, and 9 would be different from those encountered in ponds 1 through 6.

Under the contract specifications, payment for excavation of materials was included within the contract price, i. e., was not a separate payment item, except for "rock excavation," defined as

> * * * the removal ¦of solid rock, ledges, and boulders having a volume greater than one-half (½) cubic yard, which cannot be removed by the proper use of power equipment or which requires the continuous use of explosives. ·

For "rock excavation," the specifications provided for extra payment at the rate of $20 per cubic yard, with measurement to be made of the *actual volume* of rock removed to a depth of 6 inches below the design grade elevations. Regarding rock excavation, it was further provided:

> 62–01.1d VOLUME to be determined by the AVERAGE END METHOD based on ground elevations taken at the time rock is uncovered and the design elevations as shown on the drawings and as staked, plus allowances as set out above.

The specifications relating to rock excavation contained a subsection as follows:

> 6–06. IMPORTANT. THE CONTRACTOR IS HEREWITH PUT ON NOTICE THAT A MAJOR PORTION OF THE CONSTRUCTION AREA CONTAINS BOULDERS UP TO AND INCLUDING ONE AND ONE-HALF (1½) CUBIC YARDS.

Defendant's regional engineer testified that he had observed, during the construction of the Greers Ferry Dam, loads of material deposited on the project site, containing boulders up to a size of 1½ cubic yards.

In the excavation of ponds 1 through 6, plaintiff encountered boulders larger than one-half cubic yard to the extent that it was paid for 102 cubic yards of rock excavation at the $20 rate, measured on a boulder by boulder basis. This rock excavation varied from 6 cubic yards in pond 3, to 24 cubic yards in pond 6.

The administrative record establishes that there was a substantially greater quantity of boulders larger in size than one-half cubic yard, encountered in ponds 7, 8, and 9, than existed in ponds 1 through 6. In fact, it appears that some boulders in excess of 1½ cubic yards were encountered. Plaintiff's claim to the board was that the areas of ponds 7, 8, and 9 were so replete with closely-packed large boulders that the materials could not be excavated by proper use of the power equipment successfully used to excavate ponds 1 through 6, and that it was necessary to resort to continuous use of explosives to reduce boulders exceeding one and one-half cubic yards to sizes that could be handled with the equipment at the job site. Mr. Robert Walker was the duly assigned government inspector on the contract performance throughout the construction of the nine ponds, but was later removed from the project for alleged unsatisfactory performance of duties other than those related to the dispute involved herein. He was not employed by defendant at the time of the board hearing and did not testify. The testimony of plaintiff's construction superintendent was that after the removal of overburden on the areas staked for ponds 7, 8, and 9, the materials to be excavated were such that they could not be removed by pushing with an HD–11 bulldozer or by use of rippers attached to such equipment. He stated that he and Mr. Walker then undertook to agree upon a method of measuring the partially exposed rocks, that they drew a map of 110 locations where rock was apparent on the site of pond 9, that they agreed that it was impossible to measure the size of the rocks, and that drilling and blasting would be necessary. The 110 locations were drilled and blasted. Plaintiff's superintendent further testified that the materials encountered were the same through each level of excavation of ponds 7, 8, and 9, that drilling and blasting were employed throughout such ponds, and that Mr. Walker agreed that plaintiff should bill for the excavation of all materials (other than the overburden) from such ponds as 100 percent rock excavation at the $20 rate.

In its appeal document submitted to the board, plaintiff conceded that no attempt was made to measure any boulders contained in the materials excavated from ponds 7, 8, and 9, other than as above-described by plaintiff's general superintendent. In its claim letter to defendant's contracting officer, plaintiff stated in part as follows:

This claim does not intend to indicate that all the rock and boulders in the area in question exceeded 1½ cubic yards in volume. As a matter of fact, there were undoubtedly rock and boulders of all sizes and shapes lying between the very large boulders but it was impossible to remove any of the material without continuous blasting due to the interference of those very large boulders.

In its posthearing brief to the board, plaintiff stated that the sole question presented was whether or not the direction given to plaintiff by the government's representative as to the measurement of the materials and as to the blasting method of removal of the materials entitled plaintiff to have all of such materials (except overburden) from ponds 7, 8, and 9 paid for as rock excavation.

As required by Rules 96(b) (2) and (3) of this court, plaintiff specifies the following errors of law and fact in challenging the finality of the board's decision:

1. That the Board refused to allow Plaintiff to receive payment for excavation of materials properly classified as rock by the Contracting Officer's duly authorized representatives and removed by systematic drilling and blasting. Such rock was measured by the average end area method, entitling Plaintiff to payment for 3110.3 cubic yards (after subtracting the overburden and the 1,273 cubic yards previously paid) at the contract unit price for rock of $20.00 per cubic yard. In refusing to reverse the Contracting Officer and allow such payment, the Board erred in that:

A. The Contracting Officer, as a matter of law, is bound by the acts of his duly authorized representatives, i. e., the Construction Engineer (Mr. Robert Walker) and the Government Engineer (Mr. Billy F. Horton).

B. The decision of the Contracting Officer to pay only 35% of the quantities was not supported by substantial evidence and was arbitrary and capricious.

C. Comparison of materials excavated from the first six ponds not involved in the dispute with materials excavated in ponds 7, 8 and 9 was an erroneous contract interpretation and contrary to the substantial evidence before the Board.

D. Classification and consideration of the appeal as a "changed condition" under Article 4 of the contract when not so claimed by Plaintiff or so considered by the Contracting Officer (or raised in any of the briefs on appeal) was erroneous as a matter of law and was arbitrary and capricious.

In support of finality of the board's decision, defendant argues: (1) That the board correctly held that plaintiff was not entitled to additional payment for 100 percent of the material excavated since it is undisputed that not all of such material was rock; (2) that the defendant cannot be bound by an alleged understanding between the contractor and the inspector to bill the excavated material as 100 percent rock; and (3) that plaintiff's arguments concerning the board's application of the changed conditions clause are without merit.

■ There is no evidence in the administrative record that there were any areas of solid rock or ledges expected or encountered in any of the ponds, and it is clear that the only rock contained in the excavated materials of the ponds was boulders which were part of the fill in which such ponds were constructed. Defendant's regional engineer had observed deposit of fill on the site, and in accordance with his observations, defendant's specifications notified bidders that boulders up to 1½ cubic yards in size would be found in a major portion of the construction area. Defendant proposed

to make extra payment for boulders in excess of one-half cubic yard. Plaintiff by its prebid site inspection knew that the excavation for the ponds would be in fill materials. Overburden on the fill prevented observation of the quantity and sizes of boulders to be encountered, and plaintiff was entitled to rely on defendant's statement concerning the maximum size of boulders to be found. Plaintiff's excavation equipment on the project consisted of two HD–11 bulldozers, one smaller HD-6 bulldozer, a loader, and trucks.

The specifications required measurement of the *actual volume* of rock removed. Both parties contemplated only boulders (not solid rock or ledges) in the materials to be excavated from all ponds. The conduct of the parties in measuring rock excavation on a boulder by boulder basis in ponds 1 through 6 demonstrates clearly that the intention of the parties under the terms of their contract was that such measurement would be made of boulders encountered in ponds 7, 8, and 9. The average end area method for measurement of rock excavation was obviously intended for any solid rock or ledges encountered in excavation required on the project site outside of the fill areas.

Recognizing that plaintiff in excavating for ponds 7, 8, and 9, encountered boulders up to three and four cubic yards in size, the board reasonably concluded that plaintiff could not be charged with the duty to have a power shovel on the project. The board found that plaintiff's equipment at the job site could move boulders of the size mentioned in the specifications, but (impliedly) not larger ones. Pertinent extracts from the board's decision are as follows:

* * * Rather than giving the contracting officer the opportunity to consider alternative methods of boulder measurement, the appellant [plaintiff herein] concentrated on convincing the inspector that the total volume of excavated material should be reported for payment purposes as rock. * * *

The most reasonable course of action that could have been followed when the large massed boulders presented the parties with a measurement problem was one that the contracting officer had the right to direct under the Changed Conditions clause. This was bringing onto the work site at Government expense a power shovel large enough to move out the boulders to allow those meeting the "rock" definition to be measured. The Board sees no justification whatever for treating all of the volume as rock. We have noted that the appellant's counsel has conceded that a change or amendment was required because of the measuring difficulty. The adjustment required because this change became necessary must be equitable to the Government as well as to the contractor, and under either Article 3 [Changes] or 4 [Changed Conditions] must relate to the *contractor's cost*. It would not be reasonable to use as a basis for the price adjustment an absolute extension of the twenty dollar unit price. That price certainly was not intended to be applied to the total volume of the excavation in the pond areas, since both parties knew that the material to be taken out at the pond sites was (as described by the appellant) "filled ground." The conduct of the parties in measuring each large boulder at the first six ponds established their intent to distinguish between such boulders and the gravel, soil and sand that also was present.

The theory of plaintiff's claim, as summed up by its attorney in his opening statement before the board, was that the boulders were not measured as to volume, that it became impossible to measure them because they were broken up in place by explosives at the direction of defendant's inspector, and that the resulting impossibility of measurement "constitutes a change or an amendment to or a digression from" the specifications, agreed to by the government.

In addition to the statements and conduct of defendant's inspector, plaintiff

relies on a statement made by defendant's regional engineer to establish that an agreement was reached between the parties to consider all materials from ponds 7, 8, and 9 as rock excavation. In reply to a question as to whether he had had a discussion with Mr. Billy F. Horton (defendant's regional engineer) with reference to the excavation of ponds 7, 8, and 9, plaintiff's construction superintendent replied:

> * * * We talked of the coming month's billing, this being close to the time of the month that we was to prepare our pay estimate, and inasmuch as the rock was in question, I asked Mr. Horton just exactly what would I do about the rock. He was in his automobile leaving at the time, and he told me to bill the rock one hundred percent. * * *

Even though this limited testimony was not denied by defendant's regional engineer in his later testimony, the board was obviously justified in not giving any weight to it for the purpose of establishing that the regional engineer had agreed to a change or modification of the contract terms regarding measurement of rock excavation. The regional engineer was not present when ponds 7, 8, and 9 were excavated, and the obviously casual conversation occurred after such work was done, and without the problem having been more than superficially presented to him.

The testimony and evidence in the administrative record wholly fails to establish the quantity and sizes of boulders that were contained in the materials excavated from ponds 7, 8, and 9. At no time were any of such boulders exposed more than to show their upper surfaces. It is clearly established that they could not be measured under such circumstances, and that they could not be measured after blasting. Thus, there is no evidence in the record upon which even a reasonable approximation could be made as to the volume of such boulders, whether more or less than the 35 percent of excavated materials, as allowed by the defendant's contracting officer. Since the plaintiff had the burden of proof before the board, plaintiff cannot recover more than the payments allowed and paid by the contracting officer, unless it is correct in its theory that defendant is bound by the conduct and statements of its inspector, Mr. Robert Walker.

As shown by the language contained in the board decision, quoted above, the board included in its rationale a discussion of the applicability of the standard changed conditions article, as well as the standard changes article. In its motion for reconsideration, plaintiff excepted to the board's decision on the ground that neither party had presented or advanced the theory of changed conditions on the level of the contracting officer or to the board in the presentation of the administrative claim. Neither party did. In its decision on reconsideration, the board concluded that it was not precluded from deciding a claim on a theory not advanced by the parties, citing Paul C. Helmick Co., IBCA–39, 56–2 BCA ¶ 1096. This was a proper application of the rule of law announced by this court in John A. Johnson Contracting Corp. v. United States, 132 Ct.Cl. 645, 655–656, 132 F.Supp. 698, 703 (1955).

In any event, the above-quoted language in the board's decision plainly demonstrates that the board considered the changed conditions article only in the alternative to the changes article, as was also plainly indicated by the following language extracted from the board's decision on reconsideration:

> * * * It was noted in the principal opinion that the "appellant seems to have proceeded with its excavation work only upon the basis of its dealings with the inspector." The appellant's counsel advised the Board in his opening statement that the directions of the Government's inspector concerning the rocks in Ponds 7, 8 and 9 were "a change or an amendment to or a digression from these specifications." Thus, the appellant either encountered a changed condition that re-

quired the issuance of a change order, or the inspector purported to make a change or amendment (which he did not have authority to do). \* \* \* Plaintiff continues to insist before this court that the changed conditions article is inapplicable in this case. However, the controlling issue before this court is whether the board erred as a matter of law in ruling on the alternate theory under the changes article that the defendant's inspector lacked authority to bind the defendant in agreeing with the plaintiff that the method of measuring the boulders in the excavated materials be changed from the method prescribed in the specifications.

 Regarding the authority of inspectors, the contract provided as follows:

> Inspectors employed by the Government will assist the Engineer in making all necessary inspections and measurements and will enforce a strict compliance with the terms of the contract and the orders of the Engineer. No decisions or instructions of an Inspector will at any time relieve the Contractor from the responsibility of complying fully with all the requirements of the Contract. In cases of difference arising between an Inspector and the Contractor or his agent, appeal shall be taken to the Engineer. *Inspectors are not authorized to waive or alter in any. respect any of the terms or requirements of the contract,* to make additional requirements, to grant extensions of time or delays, or to waive forfeitures. The Contractor shall not be entitled to payment for any work improperly performed, even though it be allowed by an Inspector. [Emphasis supplied.]

Plaintiff cites Harvey Radio Laboratories, Inc. v. United States, 126 Ct.Cl. 383, 391, 115 F.Supp. 444, 449 (1953), cert. denied, 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425 (1954), in support of its argument that the doctrine of estoppel should be applied in this case to prevent a repudiation by defendant of the statements and conduct of defendant's in-

spector. But such case, and the cases therein cited, are inapposite. It is a well established rule of law that the doctrine of estoppel cannot be applied against the defendant on account of unauthorized statements or acts of an officer or employee who is without authority in his individual capacity to bind the defendant. Byrne Organization, Inc. v. United States, 152 Ct.Cl. 578, 587, 287 F.2d 582, 587 (1961). Defendant's inspector was without authority to alter the contract provisions. Woodcraft Corp. v. United States, 146 Ct.Cl. 101, 173 F.Supp. 613 (1959); Jefferson Constr. Co. v. United States, 151 Ct.Cl. 75 (1960); Bornstein v. United States, 170 Ct.Cl. 576, 345 F.2d 558 (1965).

COLLINS, Judge (concurring):

I agree completely with the disposition of this case by the court. There is one point, however, which I do not think the commissioner's opinion makes sufficiently clear and, lest there be any misunderstanding, regarding which I would like to express my views.

In my opinion, plaintiff is entirely correct in arguing that the board improperly decided the case under the changed conditions clause of the contract. The contractor was fully informed by the contract to expect quantities of rock, and special pay was provided for the removal thereof. The Government was, of course, equally cognizant of the situation. There was no change in the conditions shown in the contract specifications or, for all the board knew, in those normally inhering in the type of prior-fill excavation involved in this contract. The contractor readily admits that he was anticipating the necessity of rock removal. The board's conclusion that the rock-pay provision was not intended to apply, as written, in the instant circumstances is unsupported. Accordingly, there was no changed condition.

Nor was there any change in the contract, since the inspector's acquiescence in plaintiff's planned treatment of the excavations of the ponds in question could not, as the court holds, change the con-

tract provisions or requirements. There was no modification in the method of, or pay for, rock removal.

What was involved was rather a factual determination of the amount of rock removed and the amount of pay plaintiff was to receive therefor under the contract provisions. The board clearly had jurisdiction to initially decide this question. The fact findings regarding quantum made under the erroneous application of the changed conditions clause are common to a measurement of damages under the rock-pay provision. For these reasons, and since plaintiff has not demonstrated his right to recover more than the board allowed, I concur in the affirmation of the board's decision.

## CONCLUSION OF LAW

Upon full review of the administrative record, it is concluded that the decision of the Interior Board of Contract Appeals is supported by substantial evidence, is not arbitrary or capricious, and is correct as a matter of law; that plaintiff's motion for summary judgment should be denied; that defendant's cross-motion for summary judgment should be allowed; and that plaintiff's petition should be dismissed.