**BLUE CROSS ASSOCIATION and Blue Cross and Blue Shield of North Carolina**

v.

**The UNITED STATES.**

**No. 454–76.**

United States Court of Claims.

Jan. 25, 1978.

Philip S. Neal, Washington, D. C., for plaintiffs; Barron K. Grier, Edward A. Lenz, Miller & Chevalier, Washington, D. C., of counsel.

Donnie Hoover, Washington, D. C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D. C., for defendant; Jeffrey P. Robbins, Washington, D. C., of counsel.

Before COWEN, Senior Judge, DAVIS, and KUNZIG, Judges.

ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This is a Wunderlich review case involving cost-reimbursement contracts for health care services rendered by the Blue Cross Association (BCA) and by Blue Cross and Blue Shield of North Carolina (NCBCBS) (plaintiffs). The Armed Services Board of Contract Appeals (the Board) held that North Carolina franchise taxes incurred by the plaintiffs were not properly chargeable to the Government under the contracts in

question. Plaintiffs ask us to upset the Board's determination pursuant to our power of review established by the Wunderlich Act, 41 U.S.C. §§ 321–22 (1970), and the case is now before the court on cross-motions for summary judgment. For the reasons which follow, we hold for defendant (and we affirm the Board's decision).

Plaintiff NCBCBS is a non-profit corporation organized under the laws of North Carolina and having its principal place of business in Durham, North Carolina. Between the years 1967–71, plaintiff NCBCBS entered into negotiated cost reimbursement no-fee contracts (the CHAMPUS contracts) with the Department of Defense to administer portions of the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS). In 1970, plaintiff BCA entered into a negotiated cost reimbursement no-fee contract (the Medicare contract) with the Department of Health, Education and Welfare to administer portions of the Medicare program; BCA then subcontracted with NCBCBS for daily administration of the Medicare program in North Carolina.

NCBCBS is subject to a state franchise tax in the amount of one third of one percent (.33%) of its membership dues. N.C.Gen.Stat. § 57–14.[1] The taxable "membership dues" in this case included premiums collected by NCBCBS from its non-government business (premium business) and did not include any of its receipts from the cost-plus Government contracts.[2] Since NCBCBS was primarily involved in the sort of premium business which was taxable under the statute, it established in its premium rate-setting formula a factor of .33% which represented that tax assessment. Though NCBCBS thus charged the tax to its premium business (non-Government) for rate-setting purposes, its books charged the tax (for accounting purposes) to all lines of business. This attempted allocation of a portion of the franchise tax to the Government contracts is the subject matter of the controversy here.

For the years 1969 and 1970, NCBCBS paid a total state franchise tax of $593,045. Of this sum, it allocated $9,116 to the CHAMPUS contract. For the year 1971, NCBCBS incurred a state franchise tax in the amount of $427,966 and allocated $52,-587 to its subcontract with BCA (i. e., the Government Medicare contract).

All the allocations were denied administratively. The Department of Defense rendered a final decision disallowing NCBCBS's CHAMPUS charges in 1974, and the Department of Health, Education and Welfare disallowed BCA's Medicare charges in 1975. Plaintiffs appealed to the Armed Services Board of Contract Appeals in 1976.

In consolidated proceedings before the Board, the parties stipulated that the franchise tax applied to NCBCBS's premium business and that the Medicare and CHAMPUS contracts were "cost plus" programs not subject to regulation by the North Car-

---

1. N.C.Gen.Stat. § 57–14 (in effect during the period at issue) provides:

§ 57–14. Taxation.—Every corporation subject to the provisions of this chapter is hereby declared to be a charitable and benevolent corporation and all of its funds and property shall be exempt from every State, county, district, municipal and school tax or assessment, and all other taxes and license fees, from the payment of which charitable and/or benevolent institutions are now or shall be hereafter exempt. Provided, however, nothing herein contained shall prevent or prohibit corporations subject to the provisions of this chapter from paying for services rendered by municipalities and counties. For the purpose of raising revenues sufficient to defray the expenses of the administration of this chapter, and in lieu of all other taxes, *an annual franchise or privilege tax is hereby levied upon every corporation subject to the provisions of this chapter at the rate of one third of one percent of the gross annual collections from membership dues exclusive of receipts from cost plus plans.* The General Assembly of North Carolina does hereby appropriate the sum of four thousand dollars ($4,000) annually from its general funds to be paid over to the Department of Insurance of the State for its use in the discharge of the duties by this chapter imposed upon the Commissioner of Insurance of this State. (emphasis added).

2. Other cost-plus contracts, such as the one NCBCBS entered into with Reynolds Industries, are not relevant to this case. For ease of discussion, we will refer to NCBCBS's business as consisting of cost-plus Government contracts and non-Government premium business.

olina Commissioner of Insurance. The Board found that the formula by which NCBCBS determined its non-Government premiums included a .33% factor for "regulation and supervision" and it found that NCBCBS recovered the franchise tax "in its entirety through the premiums collected from [plaintiffs'] non-Government business." The Board held that the state franchise tax was not an allowable cost of the Government contracts and denied plaintiffs' claim. Plaintiffs filed their petition in this court on November 5, 1976, seeking Wunderlich Act review of the Board's findings of fact and conclusions of law.

Plaintiffs contend that the North Carolina state tax is a cost of doing business in the state, benefits all lines of business, and is an indirect cost properly allocable to the Government contracts as well as to non-Government premium business. Plaintiffs maintain their inclusion of the .33% tax factor in their premium calculation formula is not a relevant consideration. The Board below erred, plaintiffs assert, in relying on the premium formula and in concluding that plaintiffs had treated the tax as a direct cost of their premium business and had recouped it, in its entirety, from the premium business.

Defendant responds that this court need not reach the question whether the state taxes involved here are costs of the type which could be properly allocable. Defendant insists that because plaintiffs, in fact, passed the tax cost on to their non-Government membership through the rate structure and have already recovered the entire amount, plaintiffs may not now charge any part of it to the Government contracts.

This court agrees with defendant (and with the determination made by the Armed Services Board of Contract Appeals). Plaintiffs have already extracted the .33%

factor from their policy holders and may not now extract it a second time from the Government.

The question whether state franchise taxes such as those imposed on plaintiffs by North Carolina might (in the abstract) be properly allocable to all lines of business, including the Government contracts, is not the issue in this case. We might well agree with plaintiffs that the franchise tax benefits the whole business and *could be* so allocated.[3] The only issue in this case, however, is whether plaintiffs *did* so allocate them. On the facts of this case, it is clear that plaintiffs did not charge the tax costs to all lines but, instead, deliberately treated them as direct costs of its premium, non-Government business and have already recovered those costs.

In establishing the premium rates for its non-Government business during the period in question, plaintiff NCBCBS included a factor of .33% which represented the "one third of one percent of the gross annual collections from membership dues" by which the franchise tax was measured. NCBCBS's vice-president for financial services so testified in proceedings before the Board. Plaintiffs also stipulated that the Government contracts were not subject to regulation by North Carolina. Plaintiffs cannot take issue with the Board's finding that the tax factor for State regulation and supervision was taken into account by NCBCBS in its non-Government premium structure.

Not only did NCBCBS treat the State tax as a direct cost of its non-Government premium business for rate-making purposes, but it was also successful in recovering the cost of the tax from its non-Government premiums. NCBCBS's vice-president for financial services conceded on cross-examination that the tax was so recovered. The

3. Plaintiffs have argued persuasively that despite the stipulations and concessions made in this case their costs are allocable under the "benefit" test which this court applied in *Lockheed Aircraft Corp. v. United States*, 179 Ct.Cl. 545, 375 F.2d 786 (1967). In *Lockheed*, we had occasion to review the Armed Services Procurement Regulations in determining whether a personal property tax assessed against a contractor's commercial inventory "benefitted" the entire business. We need not reach any of the legal principles announced in *Lockheed* to decide the instant case. The case now before us is distinguishable on its facts, and it is limited to those facts.

Board's resultant finding that the tax was wholly recovered from plaintiffs' non-Government business is, thus, supported by strong evidence in the record.

Plaintiffs cannot (and do not) convince us that, on this record, the Board's findings of fact are arbitrary, capricious, or not supported by substantial evidence. Plaintiffs make much of their book allocations of the franchise tax and state that, under their accounting system, they did allocate the cost to all lines of business. We have no doubt that the Board considered the internal accounting methods used by NCBCBS and then properly relied on the rate structure as evidence of contrary treatment. (Indeed, the Board noted that no book allocations were made at all until 1971, at which time plaintiff made a Medicare allocation and retroactive CHAMPUS allocations.) Because the Board correctly relied on testimony in the record to support its conclusion that the tax was recovered, this court will not upset that determination on the accounting grounds which plaintiffs now advance. The Board's decision withstands Wunderlich Act review and is final and conclusive.

In summary, we have held that the Board did not err in the proceedings involved here. Plaintiffs made a deliberate and conscious attempt to recover the tax in its entirety from its non-Government business and succeeded. They charged it and recouped it from non-Government business; plaintiffs may not now recover it again from the Government.

Accordingly, plaintiffs' motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted, and judgment is hereby entered for defendant.