**BLUE CROSS AND BLUE SHIELD ASSOCIATION and Empire Blue Cross and Blue Shield**

v.

**The UNITED STATES.**

No. 355–86C.

United States Claims Court.

Nov. 23, 1987.

Thaddeus Holt, Washington, D.C., for plaintiffs. Robert A. Bicks and John L. Shurtleff, of counsel.

Joseph A. Kijewski, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Jeffrey Robbins, U.S. Dept. of Health and Human Services, Office of Gen. Counsel, of counsel.

## OPINION

MARGOLIS, Judge.

This dispute centers on a disagreement as to whether plaintiffs are entitled to be reimbursed for a specific cost under certain cost-reimbursement, no-fee contracts with the government. The Armed Services Board of Contract Appeals (ASBCA or Board) denied plaintiffs' claim for reimbursement. Plaintiffs now seek reversal of the Board's decision under the Wunderlich Act standards (Count I). Plaintiffs also set forth claims based on breach of contract (Count II), restitution (Count III), and an uncompensated taking of property (Count IV). Plaintiffs have filed a motion for partial summary judgment on Counts I, III, and IV, and seek $905,576 plus interest in damages. Defendant has filed a cross-motion for summary judgment on all four counts. After a careful review of the Board's decision and the record, and after hearing oral argument, the plaintiffs' motion is denied, and the defendant's motion is granted.

## FACTS

On June 16, 1966, the government and plaintiff Blue Cross and Blue Shield Association (BCBSA) entered into a contract pursuant to which BCBSA would act as an intermediary to perform certain administrative functions dealing with the Medicare program. The contract provided that BCBSA would administer the program on a "no-cost" basis, making neither a profit nor a loss, with the government paying BCBSA for its costs of administering the program.

The contract allowed BCBSA to subcontract the performance of the services to local affiliates. In the southern New York area, BCBSA subcontracted to Associated Hospital Services of New York (AHS), which was later succeeded by plaintiff Empire Blue Cross and Blue Shield (Empire) on June 1, 1974.

The 1966 contract was superseded by a June 29, 1970 contract, which in turn was superseded by a July 1, 1973 contract that ran through June 30, 1975. The period at issue here extends from January 1, 1968 through May 31, 1974.

New York state law empowers the New York Insurance Department, for the purpose of defraying its operating expenses, to levy assessments against insurance companies doing business in the state. *See* N.Y.Ins.Law § 332 (McKinney 1985) (formerly § 32-a). Each insurance company operating within the state is charged a *pro rata* share of the total amount required to operate the Insurance Department for the year. Each company pays a percentage of the total amount equal to that company's percentage share of the total premiums received by all insurance companies in the state that year. Although AHS was subject to this assessment, AHS did not allocate any portion of this assessment to its Medicare costs from the beginning of the contract in 1966 to May 1974. Instead, AHS took into account the entire state assessment when setting premium rates for its private subscribers.

When Empire took over AHS, it immediately began to allocate a portion of the state assessment to Medicare. During final settlement of its contracts with the government, Empire asserted that it was entitled to be reimbursed by the government for a percentage of the state assessment for the period extending from January 1, 1968 through May 31, 1974. This claim was denied, and plaintiffs appealed to the ASBCA. In its opinion dated February 5, 1986, the Board concluded that AHS had consistently identified and treated the New York assessment as a direct cost of its private subscription business; that AHS had not, during the period at issue, allocated any portion of the assessment to the Medicare program; and, that AHS could not retroactively change the accounting method it had employed to recover the cost of the assessment.

## DISCUSSION

### Count I: Wunderlich Act

The question faced by this court under Count I of the complaint is whether the decision the Armed Services Board of Contract Appeals should stand. Both parties agree that the Wunderlich Act principles apply to this court's review of the Board's decision. Plaintiffs strenuously argue that the Board's decision should be reversed, both because the Board based its decision on a novel theory different than the theory to which the parties stipulated, and because the Board made erroneous conclusions of law in applying the theory it used. Defendant contends that the Board did in fact properly rule on the stipulated issue.

■■■ Interpretation of a contract under the Wunderlich Act is a question of law for the court to decide; the administrative interpretation is not binding. *See* 41 U.S.C. § 322 (1976). Nevertheless, the Board's interpretation is entitled to careful consideration and will be accorded great respect if not unreasonable. *Dale Ingram, Inc. v. United States*, 201 Ct.Cl. 56, 71, 475 F.2d 1177, 1185 (1973); *Shuey Aircraft, Inc. v. United States*, 3 Cl.Ct. 243, 245 (1983). Furthermore, the "factual determinations that form the basis of the Board's contract interpretation are entitled to finality if supported by substantial evidence." *Dale Ingram, Inc.*, 201 Ct.Cl. at 71, 475 F.2d at 1185; *Peterson–Sharpe Engineering Corp. v. United States*, 6 Cl.Ct. 288, 293 (1984).

■■■ In a Wunderlich Act case, the role of the Claims Court is not to determine whether the court would agree with each finding were the court to make the finding itself; rather, the court's inquiry is strictly limited to whether the Board's decision was supported by substantial evidence. *See Iconco v. United States*, 6 Cl.Ct. 149, 152–53 (1984), *aff'd*, 770 F.2d 179 (1985). A

careful review of the Board's decision leads this court to the conclusion that the Board's factual determinations are supported by substantial evidence and that the Board's interpretation of the contract is not unreasonable.

In preparation for the ASBCA hearing, the parties stipulated:

> The government is not challenging this cost on a "benefit" theory. That is, the government recognizes that if this cost were consistently treated as an indirect cost to all lines of business, the government would pay its *pro rata* share of the cost if it were not recovered through the private premium business. Rather, the government contends that such costs have been finally recovered from the subscriber premiums of AHS ... and that under *Blue Cross Association v. United States*, 568 F.2d 1339 (Ct.Cl 1978), this precludes their being charged as allowable costs to the contract in question. The appellants contend that *Blue Cross Association v. United States, supra,* is not applicable.

In its decision, the Board found that AHS "consistently treated the New York assessment as a cost of its private subscription business, allocating the cost entirely to its experience-rated and community-rated policies." The Board ruled that because AHS's accounting methods treated the cost as a direct cost and not as an indirect cost, the cost could "not be charged to the subject contracts either directly or indirectly." The Board concluded that "[i]t was Associated's obligation to choose on a prospective basis the accounting method to be employed for recovering the cost of the assessment...." Because AHS chose to recover its costs by treating the entire assessment as a direct cost, the Board held that AHS was precluded from retroactively modifying its accounting method to allocate a portion of the assessment as an indirect cost.

The Board erred, plaintiffs argue, in deciding the case on a "wholly novel" theory different than the theory to which the parties stipulated. Plaintiffs contend that the only issue before the Board was whether government reimbursement would constitute "double recovery." Defendant believes that the plaintiffs read the parties' stipulation and the Board's decision far too narrowly. The defendant states that its position before the Board was that "pursuant to the terms of the contract which barred the charging to the Government of costs treated by [AHS] as direct costs of non-government business, AHS could not retroactively change its treatment of the assessment" because, once allocated as direct costs, those costs were recovered, and a change in plaintiffs' accounting methods would constitute a "double recovery" of the costs.

The question the Board faced was not whether AHS *could* have allocated the assessment as an indirect cost, but whether AHS *did* so allocate them. *See Blue Cross Association v. United States*, 215 Ct.Cl. 400, 404, 568 F.2d 1339, 1341 (1978) (hereinafter *Blue Cross of North Carolina*). The Board found that AHS's chosen accounting method did, in fact, treat the assessment as a direct cost, therefore precluding allocation to the government contract.

While the Board's opinion does not squarely address the issue of double recovery, that alone does not provide grounds for reversal. While in *Blue Cross of North Carolina*, the Court of Claims investigated whether a recovery had been made, the reasoning of the Board's opinion in this case does not require an examination of whether plaintiffs had actually recovered the assessment in full. Plaintiffs are correct that the facts of this case differ from the facts in *Blue Cross of North Carolina*. The plaintiffs in that case charged the entire tax to their non-government business, while at the same time, for accounting purposes, their books allocated a portion of the tax as an indirect cost chargeable to the government. In the case at hand, AHS charged the assessment solely to its non-government business and, in line with that practice, AHS's accounting method treated the assessment as a direct cost. No por-

tion of the assessment was allocated as an indirect cost chargeable to the government. The Board correctly recognized that plaintiffs, in effect, seek to change their accounting method retroactively to treat a portion of the assessment as an indirect cost chargeable to the government.

In *Blue Cross of North Carolina,* the ASBCA had to determine whether the contractor was entitled to recover under both methods of cost recovery—recovery of the entire tax as a direct cost together with recovery of an allocated portion of the tax as an indirect cost. The Board's decision in that case was that the tax could not be claimed as an indirect cost because it had already been recovered as a direct cost. 215 Ct.Cl. at 403–05, 568 F.2d at 1341. In the case at hand, because the Board found that AHS specifically identified the assessment as a direct cost of its private subscription business and that AHS did not allocate a portion of the assessment as an indirect cost, the Board did not have to determine whether the costs had actually been recovered as direct costs. Section 1–15.202 of each of the contracts specifically provides that costs identified specifically with other work of the contractor are direct costs of that work and are not to be charged to the contract directly or indirectly. In light of its factual findings, the Board properly interpreted the applicable language of the contracts. The Board ruled that because AHS's accounting method had specifically identified the assessment as a direct cost of its non-government business, AHS could not charge the assessment to the government. The Board further found that there were no inequities that justified AHS retroactively changing its method of accounting many years after the contracts were signed.

■ The Board's legal conclusion cannot be said to be unreasonable. The Board's well-settled rule is that a contractor will be held to its normal accounting method unless the contractor shows that continued use of that method produces inequitable results and that the use of a different method will produce equitable results. *Celesco Industries,* ASBCA No. 22402, 80–1 B.C.A. (CCH) ¶ 14,271 at 70,297; *Unidex Systems Corp.,* PSBCA Nos. 24, 85, 75–2 B.C.A. (CCH) ¶ 11,549 at 55,108; *Frederic Burk Foundation,* ASBCA No. 15728, 73–1 B.C.A. (CCH) ¶ 9959 at 46,738; *Zero Manufacturing Co.,* ASBCA No. 14558, 70–2 B.C.A. (CCH) ¶ 8489 at 39,460. The sole fact that the contractor has not recovered all of the costs that could be categorized as indirect costs "is an insufficient justification for permitting an accounting change which will result in recovery." *Unidex Systems Corp.,* 75–2 B.C.A. (CCH) at 55,109.

This court also agrees with the defendant that the Board's opinion is not founded on a "wholly novel" theory. In its post-hearing brief filed on September 12, 1985 before the ASBCA, the defendant summed up its theory. At the conclusion of that brief, the defendant asserted that AHS attempted to recover the entire assessment by treating the assessment as a direct cost of its private subscription business and included the entire assessment in its private premium rate structure. Therefore, the government argued, "[o]nce having made the election to so treat this cost, [plaintiff] cannot then turn around and treat it as an indirect cost, and attempt to charge a portion of it to the government's Medicare contracts." Brief at 14–15. This is exactly the theory upon which the Board rendered its decision. The stipulation of the parties does not contradict this theory. Rather, the determination of recovery under the stipulation is conditional upon the Board finding that the assessment was treated as an indirect cost. Because the Board concluded that AHS's accounting method treated the assessment as a direct cost, the Board did not need to determine whether an actual recovery had been made.

To support the contention that the Board's application of a novel theory requires reversal, plaintiffs cite to a number of cases. *See National Labor Relations Board v. Quality C.A.T.V., Inc.,* 824 F.2d

542, 545 (7th Cir.1987); *William F. Klingensmith, Inc. v. United States,* 731 F.2d 805, 807–08 (Fed.Cir.1984); *North Alabama Express, Inc. v. United States,* 585 F.2d 783, 786 (5th Cir.1978). However, none of these cases apply to the facts currently before this court. The *Klingensmith* case involved a Board's failure to address the plaintiff's claim. 731 F.2d at 807. In this case, the Board fully explored the plaintiffs' claim, but concluded that the plaintiffs had not shown a change in circumstances to justify a retroactive modification in the accounting method. There-. fore, the Board never had to reach the issue of recovery.

*Quality C.A.T.V.* and *North Alabama Express* both hold that due process requires that interested *parties* be given reasonable notice of the claims of adverse *parties* and an opportunity to meet those claims so that the Board can decide the case based on a full litigation of the issues before it. *See* 824 F.2d at 545; 585 F.2d at 786. In this case, however, plaintiffs are not arguing that the defendant failed to provide proper notice; rather, plaintiffs claim that the Board decided the case based on a theory different than that stipulated to by the parties. Even if the Board's legal theory were novel, the Board is " 'not precluded from deciding a claim on a theory not advanced by the parties.' " *See Bruno Law v. United States,* 195 Ct.Cl. 370, 440 (1971) (quoting *L.B. Samford, Inc. v. United States,* 187 Ct.Cl. 714, 724, 410 F.2d 782, 787 (1969)).

■ In this case, plaintiffs were fully cognizant of defendant's position and had a reasonable opportunity to respond. It was plaintiff's burden to prove to the Board that special circumstances existed to justify a change in the accounting method. *See Zero Manufacturing Co.,* ASBCA No. 14558, 70–2 B.C.A. (CCH) ¶ 8489 at 39,460. Failing to meet this burden before the Board, the plaintiffs cannot now claim that the Board was required to decide the case based solely on the double recovery issue. The Board's decision not to address the double recovery issue, and instead to base its decision on a theory that was a necessary precursor to the issue of recovery, does not in any way require this court to upset the Board's decision. While a Board may be bound by the parties' stipulations of fact, the Board is not bound to accept the parties' stipulation of a legal theory. *See Bruno Law,* 195 Ct.Cl. at 440.

The plaintiff is correct that the contract allows the contractor to claim properly chargeable costs until a final closing agreement is effectuated. However, due to AHS's method of accounting, which treated the entire assessment as a direct cost, the assessment was not a cost properly chargeable to the government. As a result, only if AHS could retroactively change its method of accounting to allocate a portion of the assessment to the government would AHS be able to claim those costs in the final settlement. Because the Board refused to allow a change in AHS's method of accounting, AHS could not claim the costs of the assessment during final settlement.

Without merit is the plaintiffs' claim that the defendant "tricked" the plaintiffs into not claiming the assessment initially and pressured, threatened and exerted duress on the plaintiffs. The court finds that there is little probative evidence in the record to support these contentions.

Further, plaintiffs' lengthy arguments do not convince the court that, on the record before the court, the Board's findings of facts are not supported by substantial evidence. The Board heard from Arthur Bettauer, an expert witness who was also Empire's chief financial officer, and Walter A. Schaefer, who served as AHS's vice-president and treasurer during the period at issue. The Board also considered both AHS's internal accounting methods and the formulation of the rate structure as evidence that the assessment was treated as a direct cost. There was substantial evidence presented to the Board from which it could reach the conclusion that AHS included the entire cost of the assessment in its private rate proposals.

In light of the Board's conclusion that AHS consistently treated the assessment as a direct cost recoverable from its non-government business, the Board found there were no inequities that justified retroactively changing AHS's accounting method. While the Board may have elaborated to a greater extent in its analysis, this court concludes that the Board's conclusion is not unreasonable, and, therefore, must be upheld.

*Count II: Breach of Contract*

Defendant has moved to dismiss this claim for lack of jurisdiction. Plaintiff has indicated that it included this count as a precautionary measure in case the dispute clauses of the contracts were held to be inapplicable. The plaintiff has no objection to this count being dismissed if the contracts' dispute clauses are applied. Because this court is applying the dispute clauses, the defendant's motion is granted, and Count II of the complaint is dismissed.

*Count III: Restitution*

■ Plaintiffs, on behalf of their subscribers, contend that the government's failure to pay a portion of the assessment has resulted in unjust enrichment, which, plaintiffs argue, requires the government to make restitution. This court cannot grant relief to plaintiffs under this count for two reasons. First, to the extent a claim for restitution is based upon an implied-in-law contract, rather than an implied-in-fact contract, the claim falls outside of the Claims Court's Tucker Act jurisdiction, 28 U.S.C. § 1491(a). In *United States Steel Corp. v. United States*, 210 Ct.Cl. 228, 241–42, 536 F.2d 921, 927 (1976), the Court of Claims held:

> [W]e do not have jurisdiction under the Tucker Act (28 U.S.C. § 1491) of claims based on a contract implied in law (as distinguished from claims based on contracts implied in fact, which are within the jurisdiction of this court). Both the Supreme Court and this court have so held.

Plaintiffs attack the "ancient jurisprudence" upon which this restriction on this court's Tucker Act jurisdiction is based. While perhaps ancient in origin, the limitations on this court's jurisdiction over implied-in-law contracts has been repeatedly reaffirmed. *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 2968–69, 77 L.Ed.2d 580 (1983); *Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Fincke v. United States*, 230 Ct.Cl. 233, 246–47, 675 F.2d 289, 296–97 (1982); *Porter v. United States*, 204 Ct.Cl. 355, 365 n. 5, 496 F.2d 583, 590 n. 5 (1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975); *Hirschmann v. United States*, 11 Cl.Ct. 338, 341 (1986).

■ Second, plaintiff cannot recover under this claim because "it is well settled that there can be no implied contract where there is an express contract between the parties," as there is here. *United States Steel Corp.*, 210 Ct.Cl. at 242, 536 F.2d at 928; *Peter v. United States*, 6 Cl.Ct. 768, 780 (1984). For an implied contract to be valid, it must be unrelated to the express contract. *Peter*, 6 Cl.Ct. at 780. Plaintiff's alleged implied contract is grounded on the same facts as the express contract between the parties. Therefore, for the reasons set forth above, Count III must be dismissed.

*Count IV: Compensation for Taking*

■ Plaintiffs' fourth count is a claim of taking, based upon plaintiffs' subscribers being forced to pay higher premiums as a result of bearing the entire burden of the assessment costs. There is no taking here; the rights of the parties are strictly contractual. AHS made the initial decision as to the manner in which it would recover the costs of the assessment. The Wunderlich Act claim determined the extent of the defendant's duty to reimburse plaintiffs. If, as found here, the government has no contractual duty to reimburse plaintiffs, the failure to reimburse plaintiffs cannot be deemed a taking. There is no government taking of property involved in this case and, therefore, this count must also be dismissed.

## CONCLUSION

The ASBCA decision was supported by substantial evidence and was not unreasonable. Accordingly, this court will not upset the Board's decision, and the defendant's motion for summary judgment on Count I is granted. Also, for the reasons stated above, defendant's motion for summary judgment on Counts II and IV is granted. Defendant's motion to dismiss Count III for lack of jurisdiction is also granted. The plaintiffs' motion for partial summary judgment is denied. The Clerk will dismiss the complaint. Each party will bear its own costs.