ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Solpac Construction, Inc. dba Soltek | ) ASBCA No. 63354 |
| Pacific Construction Company | ) |
| | ) |
| Under Contract No. N62473-15-D-2426- | ) |
| 0002 | ) |

APPEARANCE FOR THE APPELLANT:     Kirk J. McCormick, Esq.
                                  Ruberto, Israel & Weiner, P.C.
                                  Boston, MA

APPEARANCES FOR THE GOVERNMENT:   Craig D. Jensen, Esq.
                                  Navy Chief Trial Attorney
                                  Sharon G. Hutchins, Esq.
                                  Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WILSON
ON THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Navy moves for partial summary judgment, alleging that Solpac Construction, Inc. (Solpac or appellant) may not recover $248,444 of its $408,997 claim, related to field office overhead because it switched to a daily rate, per diem rate method. The facts are largely undisputed that Solpac initially captured field overhead as a percentage markup on direct costs but later switched to a daily rate, per diem. However, the parties differ in their interpretation of Federal Acquisition Regulation (FAR) 31.105(d)(3) and 31.203 in their application of election of field office overhead with subcontractors. The Board has jurisdiction over the dispute pursuant to the Contract Disputes Act (CDA) of 1978, 41 U.S.C. §§7101-7109. For the reasons stated below, we grant the Navy's motion for partial summary judgment to disallow $248,444 of field office overhead.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

*Contract and Relevant Clauses*

1. Naval Facilities Southwest (Navy or government) awarded Contract No. N62473-15-D-2426 to Solpac. This was an Indefinite Delivery Indefinite Quantity contract for "commercial and institutional building construction" projects, which include "administration buildings, school buildings, hospitals, auditoriums, fire stations,

gymnasiums, office buildings, hangars, laboratories, and parking structures" at various locations with NAVFAC Southwest areas including Arizona, California, Colorado, Nevada, New Mexico, and Utah. (R4, tab 1 at GOV 1, 136; Navy's Reply to Solpac's Response to the Navy's statement of undisputed material facts ¶ 1)[1]

2.    This contract incorporated by reference (FAR) 52.233-1, DISPUTES (MAY 2014) - Alternate I (DEC 1991) and Defense Federal Acquisition Regulation Supplement (DFARS) 252.243-7001, PRICING OF CONTRACT MODIFICATIONS (DEC 1991) which applied FAR Part 31 and DFARS Part 231 (R4, tab 1 at GOV 71-72; RSNSUMF ¶ 2).

3.    DFARS 252.243–7001, PRICING OF CONTRACT MODIFICATIONS (DEC 1991), provides in relevant part:

> When costs are a factor in any price adjustment under this contract, the contract cost principles and procedures in FAR part 31 and DFARS part 231, in effect on the date of this contract, apply.

4.    FAR 31.105, CONSTRUCTION AND ARCHITECT-ENGINEER CONTRACTS (AUG 2016), provides in relevant part:

> (a) This category includes all contracts and contract modifications negotiated on the basis of cost with organizations . . . for construction management or construction, alteration or repair of buildings . . . .
>
> . . .
>
> (d) Except as otherwise provided in this paragraph (d), the allowability of costs for construction and architect-engineer contracts shall be determined in accordance with subpart 31.2.
>
> . . .
>
> (3) Costs incurred at the job site incident to performing the work, such as the cost of superintendence, timekeeping and clerical work, engineering, utility costs, supplies, material handling, restoration and cleanup, etc., are allowable as

---

[1] "RSNSUMF" refers to the Navy's Reply to Solpac's Response to the Navy's statement of undisputed material facts.

direct or indirect costs, provided the accounting practice used is in accordance with the contractor's established and consistently followed cost accounting practices for all work.

5.   FAR 31.203, INDIRECT COSTS (OCT 2009), provides in relevant part:

(b) After direct costs have been determined and charged directly to the contract or other work, indirect costs are those remaining to be allocated to intermediate or two or more final cost objectives. No final cost objective shall have allocated to it as an indirect cost any cost, if other costs incurred for the same purpose, in like circumstances, have been included as a direct cost of that or any other final cost objective.

. . .

(d) Once an appropriate base for allocating indirect costs has been accepted, the contractor shall not fragment the base by removing individual elements.

6.   The Contract incorporated by reference DFARS 252.236-7000, MODIFICATION PROPOSALS-PRICE BREAKDOWN (DEC 1991) (RSNSUMF ¶ 6), provides in relevant part:

(b) The price breakdown—

(1) Must include sufficient detail to permit an analysis of profit, and of all costs for—
(i) Material;
(ii) Labor;
(iii) Equipment;
(iv) Subcontracts; and
(v) Overhead; and

(2) Must cover all work involved in the modification, whether the work was deleted, added, or changed.

(c) The Contractor shall provide similar price breakdowns to support any amounts claimed for subcontracts.

(d) The Contractor's proposal shall include a justification for any time extension proposed.

*Task Order No. 0002*

7.    On September 30, 2015, the Navy awarded Solpac a firm fixed price Task Order No. 0002 in the total contract amount of $26,602,000 "to provide design and construction for P-776 NAVAL SPECIAL WARFARE GROUP ONE; LOGISTICS SUPPORT UNIT ONE OPERATIONS FACILITY #1 AT SILVER STRAND TRAINING COMPLEX-SOUTH, NAVAL BASE CORONADO, CA" (RSNSUMF ¶ 7).

8.    Task Order No. 0002 stated, "All contract clauses in the Basic Contract by reference or full text remain in effect unless superseded by this task order" (RSNSUMF ¶ 9).

9.    Task Order No. 0002 provided that "[p]rior to commencement of work, a meeting will be held with the contractor and the Government representative to discuss matters of mutual interest concerning the contract" (RSNSUMF ¶ 10).

*Pre-Commencement Meeting*

10.   On August 17, 2016, the Navy held a Pre-Construction meeting for Task Order No. 0002, during which minutes were taken.  The minutes state in pertinent part that any proposal for a change should be submitted on form NAVFAC 4330/43 (Estimate for Contract Modification):

> Proposed Change Orders (PCO) and Request for Proposals (RFP) are not authorizations to proceed with changes. Changes can only occur when written authorization to proceed has been signed by the contracting officer.
>
> All modifications proposals for changes under $700,000.00 may be submitted on the NAVFAC 4330/43.

The minutes also state that the following information was to be included in any proposal for a change:

> In accordance with DFARs 252.236-7000, the Government expects that any proposal for a change will include the

4

required price breakdown itemized by labor, material, equipment, subcontracts, overhead, and time. The clause states that the contractor shall provide similar price breakdowns to support any amounts claimed for subcontracts.

(RSNSUMF ¶ 11)

*Solpac Charged Field Office Overhead Costs As A Percentage Markup on the Subtotal Direct Costs*

11.   Solpac elected to use NAVFAC Form 4330/43 in submitting its modification proposals for changes over the course of the contract, which identified the "Subcontractor's Work" line 19 "Field Overhead" as a percentage[2]. Solpac repeatedly reported Field Overhead as a percentage[3] markup on the subtotal direct costs on NAVFAC Form 4330/43 when submitting modification proposals for changes. (Gov't mot., ex. 2 at 1, 4; ex. 4 at 1; ex. 5 at 1, 5, 8, 11; ex. 6 at 1, 8; ex. 7 at 1; ex. 8 at 4, 18; ex. 9 at 5, 13; ex. 10 at 1, 11, 21, 28, 32, 43, 46, 50, 60, 62, 66).

**Bilateral Modification No. 06**

12.   On January 22, 2018, Solpac submitted to the Navy Estimate of Contract Modification NAVFAC 4330/43 for ASI 022 - Retention of Basin & Armory Parking Lot Drainage Revised in the total amount of $56,396. Line 19 for the Subcontractor's Work on the proposed estimate stated, "Field Overhead 10% of line 18," with a corresponding dollar amount of $3,351. (RSNSUMF ¶ 12)

13.   The parties executed Modification No. 06 effective January 24, 2018, which incorporated and adopted Solpac's $56,396 proposal that included field overhead at 10% of the amounts for direct materials, sales tax on materials, direct labor, sales

---

[2] Line 19 reflects the "Subcontractor's Work" "Field Overhead," which is a subtotal of lines 11-17 that include direct costs for direct materials, sales tax on materials, direct labor, insurance, taxes and fringe benefits, rental equipment, sales tax on rental equipment, and/or equipment ownership and operating expenses.

[3] Solpac elected "Prime Contractor's Work" and "Subcontractor's Work" field overhead as a percentage markup of direct costs on NAVFAC FORM 4330/43 in submitting its modification proposals for changes through May 21, 2019 (gov't mot., ex. 2 at 1, 4; ex. 4 at 1; ex. 5 at 1, 5, 8, 11; ex. 6 at 1, 8; ex. 7 at 1; ex. 8 at 4, 18; ex. 9 at 5, 13; ex. 10 at 1, 11, 21, 28, 32, 43, 46, 50, 60, 62, 66).

tax on rental equipment, and equipment ownership and operating expenses (R4, tab 13; RSNSUMF ¶ 13).

**Bilateral Modification No. 08**

14.   On April 19, 2018, Solpac submitted to the Navy an Estimate of Contract Modification, NAVFAC 4330/43, for Design Change Request Memorandum Scullery Sinks with 48" drainboards in lieu of 24" in the total amount of $7,060 for Prime's Profit (RSNSUMF ¶ 17).  Line 19 for Subcontractor's Work on the proposed estimate stated, "Field Overhead 10% of line 18," with a corresponding dollar amount of $419 (*id.*).

15.   After negotiations, the parties executed Bilateral Modification No. 08 with an effective date of April 26, 2018, which reduced Prime's Profit from $7,060 to $6,501 and accepted Solpac's proposed rate of 10% field office overhead that included direct materials, sales tax on materials, direct labor, insurance, taxes, and fringe benefits, rental equipment, sales tax on rental equipment, and equipment ownership and operating expenses (gov't mot., ex. 3 at 5, 12; R4, tab 15; RSNSUMF ¶ 18).

**Bilateral Modification No. 09**

16.   On June 18, 2018, Solpac submitted to the Navy an Estimate for Contract Modification, NAVFAC 4330/43, for "DCRM MD20 - Added Security Infrastructure," in the total amount of $17,223 (RSNSUMF ¶ 20).  Line 19 for Subcontractor's Work on the proposed estimate stated, "Field Overhead 10% of line 18," with a corresponding dollar amount of $1,270 (*id.*).

17.   The parties executed bilateral modification No. 09 with an effective date of July 19, 2018, which adopted the DCRM MD20 – Added Security Infrastructure in the amount of $17,223, which provided for 10% Field Overhead in the amount of $1,270 (RSNSUMF ¶¶ 21, 22; R4, tab 16 at GOV 437).

**Bilateral Modification No. 10**

18.   On July 23, 2018, Solpac submitted to the Navy an Estimate for Contract Modification, NAVFAC 4330/43 for "Armory Light Pole Base Size Increase," NAVFAC 4330/43, in the amount of $2,381 (RSNSUMF ¶ 23).  Line 19 for Subcontractor's Work on the proposed estimate stated, "Field Overhead 10% of line 18," with a corresponding dollar amount for field overhead of $178 (*id.*).

19.   The parties executed bilateral Modification No. 10 with an effective date of August 10, 2018, which adopted Armory light pole base size increase in the amount of $2,381, which provided for 10% Field Overhead in the amount of $178 (RSNSUMF ¶ 24; R4, tab 17 at GOV 441).

**Bilateral Modification No. 12**

20.   On October 22, 2018, Solpac submitted to the Navy Estimate for Contract Modification, NAVFAC 4330/43, for "PCO 91-449R Med Dive Conversion to Natural Gas" in the total amount of $11,633 (RSNSUMF ¶ 26).  Line 19 for Subcontractor's Work on the proposed estimate stated, "Field Overhead 10% of line 18," with a corresponding dollar amount for field overhead of $819 (*id.*).

21.   The parties executed bilateral Modification No. 12 with an effective date of November 21, 2018, which adopted the natural gas conversion in the amount of $11,633, which provided for 10% Field Overhead in the amount of $819 (RSNSUMF ¶ 27; R4, tab 19 at GOV 447).

**Bilateral Modification No. 13**

22.   On October 12, 2018, Solpac submitted to the Navy Estimate for Contract Modification NAVFAC 4330/43 for "Added AV Infrastructure @ Med Dive Exam Room D179 Revised" in the total amount of $2,331 (RSNSUMF ¶ 29).  Line 19 for Subcontractor's Work on the proposed estimate stated, "Field Overhead" 10% of line 18," with a corresponding dollar amount of $119 (*id.*).

23.   After negotiations, the parties executed bilateral Modification No.13 with an effective date of November 27, 2018, to capture field overhead at a 10% percentage of the negotiated amounts for direct materials (RSNSUMF ¶ 30; R4, tab 20 at GOV 449).

**Bilateral Modification No.14**

24.   On January 28, 2019, Solpac submitted to the Navy an Estimate for Contract Modification NAVFAC 4330/43 for "PCO 91454 (FEAD PCO 012) – Armory Electrical Scope Gap Revised" in the total amount of $92,365 (RSNSUMF ¶ 32).  Line 19 for Subcontractor's Work on the proposed estimate stated, "Field Overhead 10% of line 18," with a corresponding dollar amount of $6,740 (*id.*).

25.   The parties executed bilateral Modification No.14 with an effective date of February 7, 2019, which adopted Solpac's January 28, 2019, proposal in the amount of

7

$92,365, which provided for 10% Field Overhead in the amount of $6,740 (RSNSUMF ¶33; R4, tab 21 at GOV 452).

**Bilateral Modification No.16**

26.   On January 22, 2019, Solpac submitted to the Navy an Estimate for Contract Modification, NAVFAC 4330/43, for "PCO 991-91474, Flag Pole @ Armory," in the total amount of $6,696 (RSNSUMF ¶ 35).  Line 19 for Subcontractor's Work on the proposed estimate stated, "Field Overhead" 10% of line 18," with a corresponding dollar amount of $442 (*id.*).

27.   The parties executed bilateral Modification No.16 with an effective date of March 14, 2019, which adopted Solpac's January 22, 2019, proposal for $6,696, which included Field Overhead of 10% (RSNSUMF ¶ 36; R4, tab 23 at GOV 458).

**Bilateral Modification No. 18**

28.   On May 10, 2019, Solpac submitted a proposal estimate for contract modification, NAVFAC 4330/43, for "991-91482 Delete Solar Tube Electrical" in the total amount of -$711 (RSNSUMF ¶ 38).  Line 19 for Subcontractor's Work on the proposed estimate stated, "Field Overhead 10% of Line 18," with a corresponding dollar amount of -549 (*id.*).

29.   On August 6, 2019, after negotiations, the parties executed bilateral Modification No. 18, which adopted Solpac's May 10, 2019, proposal that included credit in the amount of $711 and captured field overhead at 10% of the negotiated amounts for direct materials, sales tax on materials, and direct labor (RSNSUMF ¶ 39; R4, tab 25 at GOV 464).

**Solpac Sought Per Diem or Daily Rate for Subcontractor's Work, Modification No. 19**

30.   On May 20, 2019, Solpac submitted to the CO an Estimate of Contract Modification NAVFAC 4330/43 for "PCO 91-485 EXFOH to May 1, 2019" seeking costs totaling $1,315,028 (RSNSUMF ¶ 41).  Solpac sought a total of $565,642 for "Subcontractor's Work" performed by three of its subcontractors based on a per diem or daily rate, which includes $301,797 for Baker Electrical & Renewables LLC's (Baker) (RSNSUMF ¶ 42).

8

31. The CO questioned the Subcontractor Daily Rate based on a per diem. Following the parties' negotiation meeting held on July 2, 2019, the CO maintained the Daily Rate was not compensable (RSNSUMF ¶ 43).

32. On September 13, 2019, the CO issued unilateral Modification No. 19, providing Solpac payment for construction delays and other associated costs, but the $301,797 for Baker for "Subcontractor's Work" based on a per diem or daily rate was excluded (RSNSUMF ¶ 44; R4, tab 26).

*Certified Claim, Final Decision, and Notice of Appeal*

33. On January 4, 2022, Solpac submitted a certified claim on behalf of Baker on form NAVFAC 4330/43 seeking $408,997, which included $248,444 for Baker's Field Overhead (line 19) (RSNSUMF ¶¶ 50, 51; R4, tab 33 at GOV 893). The narrative portion of Solpac's claim explained that Baker was pursuing recovery of its delay costs incurred, of which one component is Field Overhead costs. Baker averred that it calculated its extended field overhead costs by calculating a daily rate of field overhead and multiplying that daily rate by the number of days of what it asserts is a compensable delay:

> To calculate a daily rate of general conditions, Baker divided its total adjusted general conditions of $741,230 by its actual period of performance, 722 cd [duration, calendar days]. The result is $1,026.63, which represents Baker's effective daily rate of general conditions.
>
> Baker then multiplied this daily rate of general conditions by the number of days of delay it incurred, 242 cd. The result is $248,444, which represents Baker's extended general conditions before markups.

(Gov't mot., ex. 13 at 10) Accordingly, Solpac's sponsored claim of Baker's Field Overhead on Line 19 is a per diem or daily rate in the amount of $248,444, calculated $1,026.63 per day for 242 calendar days. Thus, Baker's claim is not seeking recovery of its extended field overhead costs as a percentage markup. Baker is only pursuing recovery on a per diem basis. (R4, tab 33 at GOV 893-94; gov't mot., ex. 13 at 10)

34. By final decision dated April 25, 2022, the CO denied Solpac's claim in its entirety (RSNSUMF ¶ 54).

35. Solpac timely appealed the final decision on July 20, 2022.

9

## DECISION

*Contentions of the Parties*

The government's motion for partial summary judgment seeks to disallow $248,444 "Field Office Overhead" that Solpac seeks for Baker (gov't mot. at 1; app. compl. ¶ 7). The government argues after a lengthy history of negotiating, calculating, and capturing "Field Office Overhead" costs as a percentage markup, Solpac now wishes to change course and recover "Field Office Overhead" for its subcontractor, Baker, calculated as a per diem rate (daily rate) (gov't mot. at 2). The government points to FAR 31.105(d)(3), which pertains to certain costs associated with construction contracts that may either be charged as direct or indirect costs, but that accounting practice must be consistently followed. In addition, the government cites *M. A. Mortenson Co.*, ASBCA No. 40750 *et al.*, 97-1 BCA ¶ 28,623 at 142,918, "that field office overhead is 'allowable either as direct or indirect costs,' provided the treatment of those costs is consistent." (Gov't mot. at 21) Accordingly, since "[Solpac] elected and employed a percentage method for calculating subcontractor costs it characterized as field overhead for its subcontractor on a percentage basis while pricing and negotiating modifications[,] it is now precluded . . . from now seeking an equitable adjustment for those subcontractor costs on a per diem basis" (*id.* at 21, 26).

Appellant argues that the term "contractor" within FAR 31.105(d)(3) in relation to "provided the accounting practice used is in accordance with the contractor's established and consistently followed cost accounting practice for all work" should be interpreted to include the prime contractor and each of its subcontractors. "In order to determine whether FAR 31.105(d)(3) has been violated, it is necessary to determine whether Baker's claim, which seeks the recovery of field overhead as a direct cost, was calculated in accordance with its established, company-wide accounting practice." (App. resp. at 12. n.2, 18-19) Thus, appellant argues that the field office overhead distribution base election as a percentage basis or per diem rate (daily rate) is an election independent of the prime contractor and each subcontractor. "How [Solpac] may have priced field overhead on behalf of subcontractors other than Baker is irrelevant to whether Baker's pass-through claim, calculated on the basis of a daily rate for field overhead, is barred" (*id.* at 2). Therefore, whether "the accounting practice used is in accordance with the contractor's established and consistently followed cost accounting practices for all work" under FAR 31.105(d)(3) should only be analyzed against Baker's established accounting practices (*id.* at 13-14, 19). Appellant argues that the prime contractor's election to recover field office overhead as a percentage rate does not conflict with Baker's election as per diem (daily rate) since it is Baker's established accounting policy to capture field office overhead as per diem (daily rate) (*id.* at 17-19).

10

Appellant argues partial summary judgment is not appropriate as material facts are in dispute as to 1) Baker's established cost accounting practice in how it treats its field office overhead; 2) and whether Baker's field office overhead costs were charged or elected to be charged to the Navy as a percentage (*id.* at 18-20). In addition, citing FAR 31.201-2(c), ("When contractor accounting practices are inconsistent with this subpart 31.2, costs resulting from such inconsistent practices in excess of the amount that would have resulted from using practices consistent with this subpart are unallowable"), appellant proposes a $47,620.04 credit back to the Navy for the field office overhead (*id.* at 21-22).

*Discussion*

*Summary Judgment Standard*

The standards for summary judgment are well established. Summary judgment should be granted if it has been shown that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Once the government has made a prima facie case, however, appellant "must come forward with 'specific facts showing that there is a genuine issue for trial'" and must show what specific evidence could be offered. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

*Field Office Overhead*

FAR 31.105(d)(3) applies to construction contracts like this one, allowing contractors to treat costs incurred at a job site, also known as field office overhead costs, as either direct or indirect costs. Still, it makes clear that the contractor must maintain consistency in whichever accounting practice it chooses:

> (3) Costs incurred at the job site incident to performing the work . . . are allowable as direct or indirect costs, provided the accounting practice used is in accordance with the contractor's established and <u>consistently followed cost accounting practices for all work</u>.

(SOF ¶ 4; 48 C.F.R. § 31.105(d)(3) (2016) (emphasis added))  Therefore, contractors may charge job site overhead costs directly (percentage of markup) or indirectly (per diem/daily rate) as long as they are charged consistently.  *M.A. Mortenson Co.*, ASBCA No. 40750 *et al.,* 98-1 BCA ¶ 29,658 at 146,945-46 (Senior Deciding Group), *aff'd on recon.*, 97-1 BCA ¶ 28,623; *Watts Constructors, LLC*, ASBCA No. 59602, 15-1 BCA ¶ 35,873 at 175,373; *Pave-Tech Inc.*, ASBCA No. 61879, 22-1 BCA ¶ 38,095 at 184,999.  This is reflective of FAR 31.203(d), which states, "[o]nce an appropriate base for allocating indirect costs has been accepted, the contractor shall not fragment the base by removing individual elements" (SOF ¶ 5).  The Board explained, "[e]ven when a contractor proves it has failed to recover its entire overhead, that is insufficient justification for permitting an accounting change from one distribution base to another."  *M.A. Mortenson Co.*, 98-1 BCA ¶ 29,658 n.7.

The facts are largely undisputed.  Appellant does not dispute that from January 24, 2018, to August 6, 2019, it executed at least nine bilateral modifications to capture job site overhead costs as a percentage markup (direct costs) (app. resp. at 2-3, 13; Solpac's Response to the Navy's statement of undisputed material facts[4] ¶¶ 15, 18, 21, 24, 27, 30, 33, 36, 39; SOFs ¶¶ 13, 15, 17, 19, 21, 23, 25, 27, 29).  Yet, on May 20, 2019, Solpac submitted form 4330/43 for Baker switching to a per diem or daily rate (indirect costs) (SOF ¶ 30).

Appellant argues that the term "contractor" as used in FAR 31.105(d)(3) captures both the prime contractor and the subcontractor.  Thus, appellant argues that FAR 31.105(d)(3) allows the prime contractor to elect a different distribution base for allocating its job site overhead pool (per diem or percentage markup) compared to one of its subcontractors.  "The subcontractor cost markups are the subcontractors' determination, not [Solpac's]" (SNSUMF ¶¶ 16, 19, 22, 25, 28, 31, 34, 37, 40).  Appellant argues that the Navy's argument is flawed, "so long as one subcontractor marked up its field overhead costs on a percentage basis, all subcontractors are bound by that and cannot recover their field overhead costs on a daily rate basis.  This is not and cannot be the law."  (App. resp. at 12)  Appellant argues that the focus of FAR 31.105(d)(3) should be on "that particular subcontractor's standard accounting practice" when seeking recovery of its field overhead costs (*id.* at 12 n.2).  The Navy replied that the contract and applicable federal regulations require the prime contractor, Solpac, to elect and employ a single method of field overhead calculation.  Moreover, because Solpac "elected to capture field overhead for its subcontractor on a percentage markup basis in pricing and negotiating proposed contract modifications prior to May 20, 2019, it is precluded from seeking an equitable adjustment for field overhead for Baker on a per diem basis."  (Gov't reply at 18, 19)

_____

[4] Solpac's Response to the Navy's statement of undisputed material facts will be referred to as "SNSUMF."

When interpreting regulations, we apply the same interpretive rules we use when analyzing the language of a statute. *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015) (citing *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005)). It is well established that, when interpreting statutes or regulations, "[t]he plain meaning that we seek to discern is the plain meaning of the whole statute [or regulation], not of isolated sentences." *Beecham v. United States*, 511 U.S. 368, 372 (1994) (citations omitted).

Appellant's arguments concerning the legal interpretation of FAR 31.105(d)(3) do not raise genuine issues of material fact. The interpretation of regulations that are incorporated into government contracts is a question of law. *United States v. Boeing Co.*, 802 F.2d 1390, 1393 (Fed. Cir. 1986); *Riverside Rsch. Inst. v. United States*, 860 F.2d 420, 422 (Fed. Cir. 1988); *AM Gen. LLC*, ASBCA Nos. 53610, 54741, 06-1 BCA ¶ 33,190 at 164,533.

Our analysis starts with the language of FAR 31.105(d)(3). Appellant's arguments do not persuade us, and we decline to adopt appellant's interpretation of FAR 31.105(d)(3) to allow a subcontractor to elect a different distribution base for field office overhead than what the prime contractor has already elected. Our precedent supports that the contractor is precluded from switching from a percentage markup basis to a per diem or daily rate. *M.A. Mortenson Co.*, 98-1 BCA ¶ 29,658 at 146,945-46; *Watts Constructors, LLC*, 15-1 BCA ¶ 35,873 at 175,373; *Pave-Tech Inc.*, 22-1 BCA ¶ 38,095 at 184,999. Appellant's attempt to broaden the term "contractor" within 31.105(d)(3), "provided the accounting practice used is in accordance with the contractor's established and consistently followed cost accounting practices for all work," to capture both the prime contractor and subcontractor is inconsistent with the plain language of FAR 31.105(d)(3) and the regulation. It would be nonsensical to adopt appellant's interpretation that sometimes the term "contractor" in FAR part 31 means the prime contractor, and sometimes "contractor" means any party associated with the performance of the contract, even if they lack contract privity.[5] *See* (app. resp. at 3, 12, n.2, 13-14). In addition, FAR 31.105 employs the

---

[5] The Contract Disputes Act (CDA) defines "contractor" as "a party to a Federal Government contract other than the Federal Government." 41 U.S.C. § 7101(7). The United States Claims Court (the predecessor Court to the Court of Federal Claims) addressed the definition of "contractor" under the CDA. As the Court pointed out, since neither plaintiff in this action were signatories of the contract, "they cannot be considered 'contractors' as the term is usually understood." *See BLH, Inc. v. United States*, 13 Cl. Ct. 265, 271 (1987). The Board has consistently applied the terms "subcontract" and "subcontractor" defined in FAR 44.101 throughout the FAR and contract. *See Gen. Injectables & Vaccines, Inc.*, ASBCA No. 54930, 06-2 BCA ¶ 33,401 at 165,592; *Great*

term "subcontractor" when referencing a party who lacks contract privity. *See* 31.105(d)(2). Baker, a subcontractor, could not bring its claim directly against the Navy. (*See, Lebolo-Watts Constructors 01 JV*, ASBCA Nos. 59740, 60378, 60459, 60507, 60508, 21-1 BCA ¶ 37,789 at 2183,461 (n.50) subcontractors lack privity of contract with the government and can only sue through the prime (citing *B3 Solutions LLC*, ASBCA No. 60654, 16-1 BCA ¶36,578 at 178,138)). Thus, FAR Part 31's use of the term "contractor" does not mean both the prime contractor and the subcontractor.

If we adopted appellant's interpretation of FAR 31.105(d)(3), it would impose onto the government that each subcontractor's accounting practice would require individual monitoring by the government to ensure, consistent with the FAR requirements, that field office overhead is consistently priced by every subcontractor, in each change order to the contract. Adopting the interpretation advanced by appellant would be contrary to the clear and unambiguous terms of FAR 31.105(d)(3). Accordingly, the plain reading of FAR 31.105(d)(3) does not allow a contractor to switch between a percentage markup (direct costs distribution base) to a per diem/daily rate (indirect costs distribution base). *See M.A. Mortenson Co.*, 98-1 BCA ¶ 29,658 at 146,946 ("appellant's practice of switching between a time distribution base (per diem rate) and a direct cost distribution base (percentage markup) for allocating job site overhead costs to changes, depending on whether a time extension was involved, on its face violated the FAR requirement for a single distribution base for allocating a given overhead pool."); *Watts Constructors, LLC*, 15-1 BCA ¶ 35,873 at 175,373; *Pave-Tech Inc.*, 22-1 BCA ¶ 38,095 at 184,999; *see also Aydin Corp. v. Widnall*, 61 F.3d 1571, 1579 (Fed. Cir. 1995)("CAS 402 requires contractors to follow consistent accounting practices in classifying similar costs as direct or indirect. A contractor cannot charge a cost directly to one contract while charging similar costs to other contracts indirectly through overhead").

Finally, appellant argues that a complete forfeiture of the field office overhead is not appropriate, and the remedy would be to subtract the markup costs ($47,620.04) from the costs calculated by Baker using its per diem method (app. resp. at 22). Appellant first argues that "[c]onsistent with its established accounting practice," Baker calculated the field office overhead as a daily rate, which it reported on the 4330 forms. But later, appellant argues its cost markups on the 4330 forms may have had errors (*id.* at 21-22). Appellant's arguments are not fleshed out and are not supported by an affidavit or the cited record. Nevertheless, the Board has made it clear that we will approve retroactive accounting changes only in rare circumstances because of the "commercial havoc" that would ensue if such changes were more regularly permitted.

*Lakes Dredge & Dock Co.*, ASBCA Nos. 53929, 54266, 04-1 BCA ¶ 32,518 at 160,865).

*See Blue Cross & Blue Shield Ass'n*, ASBCA No. 26529, 86-2 BCA ¶ 18,751 at 94,427.[6]  We have rejected similar arguments in employing FAR 31.201-2(c). *See Caddell Constr. Co.,* ASBCA No. 53144, 02-1 BCA ¶ 31,850 at 157,398-99; *Pave-Tech Inc.*, 22-1 BCA ¶ 38,095 (the Board rejecting the application of FAR 31.201-2(c) with unsupported theories of economic duress and under threat of liquidated damages).  Appellant's election to recover field office overhead for some subcontractors as a percentage markup and Baker as per diem was deliberate and does not give rise to a "rare circumstance" for the contractor to change its mind in its accounting practice.  Contractors must choose how to treat field office overhead costs on contract modifications and claims carefully at the outset of performance as they will be required to live with this choice for the project's duration.  *M.A. Mortenson Co.,* 98-1 BCA ¶ 29,658 at n.7 (absent "special circumstances" involving distortion of results, switching the base distribution is not allowed).  Accordingly, appellant's argument must fail.

---

[6] A subcontractor, in accordance with its accounting system, charged its rate increases as a private subscription.  Although this cost could have correctly been allocated as a direct cost, the Board noted the subcontractor now wished to change the method of the cost retroactively, its election was deliberate, no special circumstance was present, and "[n]o change of circumstances is presented to justify the retroactive modification of this established accounting practice as proposed by appellant."  *Blue Cross & Blue Shield*, 86-2 BCA ¶ 18,751 at 94,428.  The Board cautioned against retroactively changing charges as "[t]he commercial havoc which could otherwise ensue is obvious."  *Id.* at 94,427 (citing *Reynolds Metals Co.*, ASBCA No. 7686, 1964 BCA ¶ 4,312, *recon.* 1964 BCA ¶ 4,477; *Hurd-Darbee, Inc.*, ASBCA No. 12928, 68-2 BCA ¶ 7,402; *Borg-Warner Corp., Ingersoll-Kalamazoo Div.*, ASBCA Nos. 9144, 9145, 1964 BCA ¶ 4,507, *recon.* 65-1 BCA ¶ 4622.  *Cf. Bermite Div. of Tasker Indus.*, ASBCA No. 18280, 77-1 BCA ¶ 12,349, *recon.* 77-2 BCA ¶ 12,731; *Blue Cross, Blue Shield of N.C.*, 76-2 BCA ¶ 12,112, *aff'd* 568 F.2d 1339 (Ct. Cl. 1978).

CONCLUSION

The government's motion for partial summary judgment is granted.

Dated: October 16, 2024

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

LAURA J. ARNETT
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63354, Appeal of Solpac Construction, Inc. dba Soltek Pacific Construction Company, rendered in conformance with the Board's Charter.

Dated: October 16, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

16